THE STATE, JACOB B. WILLIAMS ET AL., PROSECUTORS, v. THE MAYOR AND COUNCIL OF THE CITY OF BAYONNE AND CHARLES MacDONALD.

1. The act entitled "An act regulating the renewal of excise licenses in cities of the second class," passed February 10th, 1891 (*Pamph. L., p.* 12), has a prospective operation alone, and gives jurisdiction to renew only such licenses as have been granted according to the provisions of the charters of such cities since the act took effect. Whether the act is constituiional and also whether it confers power to renew such licenses more than once, not decided.

2. The proviso in section 1 of the act does not apply to freeholders who have recommended applications for license made before the act took effect, but only to such as have recommended such application since that time.

*Certiorari* bringing up a resolution of the board of council- men of the city of Bayonne, passed July 19th, 1892, grant- ing a license to Charles MacDonald to keep an inn, &c., in that city, and the application and recommendation on which the resolution was founded.

Argued at November Term, 1892, before Justices VAN SYCKEL and MAGIE.

For the prosecutors, *Thomas J. Kennedy.*

For the defendants, *James P. Northrop* and *Edward A. S. Man.*

The opinion of the court was delivered by

MAGIE, J.  Prosecutors attack the resolution brought be- fore us by this writ solely on the ground that the board had no power to pass it.

By the charter of Bayonne the board of councilmen were empowered to pass ordinances, among other things, to license inns or taverns.  *Pamph. L.* 1872, *p.* 686, § 40, *subd.* 14. By a supplement to the charter, there was added to subdivi-

sion 14 of section 40, a proviso that no such license should
be granted except on the recommendation of the applicant by
at least ten freeholders residing and owning real estate in Bay-
onne, who shall not have recommended for license any other
person who is awaiting the action of the board on an applica-
tion for license, or who is licensed by the board. *Pamph L.*
1874, *p.* 546.

Prosecutors do not contend that the action of the board
should have been by ordinance rather than by resolution, and
there is no reason presenting that objection, and no general
reason has been filed.

The objection is that the recommendation of MacDonald,
the applicant, for license was not such as the law required.
If this is true, the board acquired no power to grant the
license.

The facts on which this objection is based appear by stipu-
lation of counsel, and seem to have been so presented to the
licensing board as to justify and require us to consider them.
*Smith* v. *Elizabeth,* 17 *Vroom* 312.

It thus appears that MacDonald's recommendation was
dated July 1st, 1892, and signed by sixteen persons, of whom
three were not freeholders. Of the remaining thirteen, six
had, in 1890, signed recommendations of other persons who
had obtained licenses thereon expiring June 1st, 1891. These
licensees had obtained, without further recommendations, re-
newed licenses expiring June 1st, 1892. All of them had ap-
plied, without further recommendations, for renewed licenses,
to expire June 1st, 1893. Five of the applications had been
granted and one was pending when MacDonald's application
was made.

Prosecutors contend that of the six signers last mentioned,
at least five were disqualified to recommend MacDonald. If
that contention is maintained the recommendation was not
such as the law required.

This contention is not put on the ground that they were
disqualified under the terms of the proviso inserted in the
charter by the amendment of 1874, above referred to. Nor

do I think such contention could be successfully made. The language of the proviso is broader than that of the Inns and Taverns act, which forbids the recommendation of an applicant for license by any person who has recommended another applicant for the same year. Literally taken, its language might be construed to disqualify a freeholder of Bayonne from recommending A for license in 1892, because in 1880 he had recommended B for license, if B in 1892, on the recommendation of others, possessed such license. But this construction is so opposed to the obvious intent of the legislation that it must, in my judgment, yield to a more restricted construction, by which the disqualification is limited to cases where licenses existing have been granted and applications pending have been made, upon the recommendation of the freeholder who then recommends another applicant.

The claim of prosecutors is based on the provisions of an act passed February 10th, 1891, entitled "An act regulating the renewal of excise licenses in cities of the second class." *Pamph. L., p.* 12. The act seems designed to provide for the renewal of licenses without renewed recommendations, and for the disqualification of those who originally recommended the applicant from recommending others during the running of such renewed license.

On the part of defendants it is insisted that the act of 1891 either lacks validity or is not applicable to the case in hand.

In the first place, the claim is that the act regulates the internal affairs of municipalities, but is not a general law within the meaning of the constitutional provisions on that subject.

It is known that many licenses have been renewed under this act. Unless essential to the determination of this case, the constitutionality of the act ought not to be considered, for a decision against its validity would seriously affect persons who have not been heard. As the case may be disposed of on other grounds, no opinion will be expressed on the important question presented by this claim.

In the second place, defendants insist that the act does not operate upon any recommendations or disqualify any signers

thereof, except recommendations made and those who signed them after the act took effect.

The act took effect February 10th, 1891.

The six persons, whose capacity to recommend MacDonald's application is now attacked, signed the respective recommendations, which are said now to disqualify them, before that day.

Acts of the legislature are to be construed to have a prospective effect only unless the language is so clear and imperative as to admit of no doubt that a retrospective operation was intended. *Elizabeth* v. *Hill*, 10 *Vroom* 555; *Williamson* v. *New Jersey Southern R. R. Co.*, 2 *Stew. Eq.* 311; *Boylan* v. *Kelly*, 9 *Id.* 331.

The language of the act in question is involved, but on consideration I find nothing to indicate an intent that its provisions should have a retrospective operation, but rather the contrary. Stripped of unnecessary words, its first section enacts " that *hereafter* in all cities of the second class   *   *   * that *after* a license has once been granted   *   *   * to any person   *   *   * according to the terms of the charter of such city   *   *   * it shall not be requisite in order to give *   *   * jurisdiction to grant renewals of such licenses that a new application recommended by freeholders shall be first signed and presented   *   *   * but that the filing   *   *   * of a petition of renewal   *   *   * shall confer full power *   *   * to renew such license for the term of one year; *provided always,* that the freeholders who may have recommended the former application shall not be eligible as signers for any new application for the term of one year from the granting of such renewal."

The word " hereafter " at the opening of this section plainly indicates an intent to confer jurisdiction to renew licenses when certain enumerated occurrences shall have happened in the future. One is the " after " grant of a license according to the terms of a charter which requires recommendations. Then jurisdiction to renew such a license will arise upon the mere filing of a petition, &c., without renewed recommendations.

This construction moreover avoids an injustice to those who had previously signed such recommendations and who ought not, without their consent, to be treated as recommending a renewal of license. Whoever signs a recommendation since the act took effect, does so with knowledge that if the act has constitutional validity the license may be afterward renewed thereon.

Therefore the six persons, whose capacity to recommend MacDonald for license has been attacked, were not disqualified, for their previous recommendations were prior to the act of 1891, and were not carried forward or made ground of disqualification by its terms.

It is proper to add that no opinion is intended to be expressed as to the power to renew such licenses under the act of 1891 more than once; that is, for more than one year from the expiration of the original license.

The contention of prosecutors that jurisdiction to grant MacDonald license did not exist cannot prevail.

Prosecutors further object that the license to MacDonald was improperly issued, because it was signed, not by the mayor, but by the president of the board of councilmen as acting mayor.

The writ of *certiorari* does not expressly call for the license, and it is not included in the return. It is not, therefore, before us for adjudication.

But if before us, there is sufficient to show that it was properly issued.

By the terms of the charter, in case of the absence of the mayor from the city his duties devolve upon the president of the council. The evidence shows that at the time in question the mayor was absent from the city and state. The contingency on which the president of the council became invested with the authority of the mayor had therefore occurred, and he could perform the mayor's duties, one of which was the signing of licenses. *In re Cleveland*, 22 *Vroom* 319; *S. C.*, 23 *Id.* 188.

Besides, as the licensing body had adjudged that a license should be issued to MacDonald, and as the mayor, if present, would have been bound to sign the license—a duty, the performance of which might be enforced by *mandamus*—it may well be questioned whether prosecutors, having no other interest than such as pertains to citizens, can interpose such an objection.

The *certiorari* should be dismissed, with costs.