IN THE MATTER OF PETITION OF ORESTES CLEVELAND, MAYOR OF JERSEY CITY.

1. A statute giving to the mayors respectively the power to appoint the principal municipal officers, and providing that such act should go into effect in such cities wherein it was accepted at a popular election, held to be constitutional.

2. There is no constitutional interdiction of a general act that may by possibility produce local results.

3. Nor does such general act become special or local by reason of its limiting the time within which it may be accepted by the respective cities.

4. The statute authorized the respective mayors of the cities, by proclamation, to call an election to decide upon the acceptance or rejection of the act. *Held,* that in case the mayor was absent, and the charter,

in such contingency, vested the powers of the mayoralty in a specified officer, such officer could proclaim the election.

5.  A misrecital of some of the provisions of the act in the proclamation of an election, held not devoid of legal effect, the act not requiring their insertion in the proclamation, and there being nothing to show that the error affected the result of the election.

6.  It is competent for the legislature to provide for the speedy determination of the controversies relating to the title to municipal offices, the statute securing to the incumbents of such offices the same rights, in substance, that they would have had if the procedure had been by *quo warranto.*

On petition of Orestes Cleveland, mayor of the city of Jersey City, for the hearing and determining the dispute and controversy which has arisen concerning the right or title of certain persons appointed to office in Jersey City under the provisions of "An act concerning the government of cities in this state," approved April 6th, 1889.

Argued at special term convened by virtue of a supplement to said act, approved April 19th, 1889, before BEASLEY, CHIEF JUSTICE, and Justices DEPUE and KNAPP.

For the petition, *W. D. Edwards* and *Leon Abbett.*

Contra, *Gilbert Collins.*

The opinion of the court was delivered by

BEASLEY, CHIEF JUSTICE.    This litigation has its root in the act of the legislature entitled "An act concerning the government of cities of this state," approved April 6th, 1889.

The general purpose of that enactment is to vest in the respective mayors of the cities the power to appoint the principal municipal officers, thus abolishing, in the main, all the existing methods for the performance of that function.

The law, by its terms, is made operative only in such cities whose inhabitants choose to accept it, its language in that respect being, " that the board of aldermen or common council of any city may, by resolution, or the mayor of any city may,

by proclamation, submit the question of the acceptance or rejection of this act to the voters of such city at any general or charter election to be held therein, whereof at least two days' notice shall be given by public advertisement in two daily newspapers circulating in such city, and if a majority of those who shall vote for the acceptance or rejection thereof shall be in favor of the acceptance of this act, then this act shall go into effect immediately, and the grant of power herein made to any such city shall be deemed to be accepted by such city, and such city shall be bound by the terms of this act." The section concludes with a proviso that no election shall be held by force of the statute after the 1st day of October, 1890.

This act was accepted by a popular vote at an election held in Jersey City, and the mayor has proceeded to fill the municipal offices in pursuance of its provisions.

The counsel of the former officers who were thus superseded, in their argument before us, challenged, in the first place, the validity of the statute itself, and, in the second, the legality of the election that has been held by virtue of its authority.

In support of the first of these propositions it was insisted that the legislation was unconstitutional, on the ground that it was special and local.

It was not denied that the statute by its terms was general, as it embraced the whole of the legal class to which it is applicable, and was unlimited with respect to place; but the objection was to its capability of being converted into a local and special law by its acceptance by some cities and its rejection by others. It was said that the true test of the conformity of legislative action to the clause of the constitution to which the argument related, was the result of such action. And in support of this doctrine the case of the appeal of the *City of Scranton School District* v. *Lackawanna Iron and Coal Co.*, reported in 113 *Penna. St.* 176, was relied on. The question presented for consideration was whether a law was valid that was to take effect only when adopted by a municipal vote, in view of that clause of the constitution of Pennsylvania

which prohibited the enactment of local or special laws regulating the affairs of cities, and the court repudiated altogether that species of legislation, saying: "The law will be limited to one or more cities that do accept, and that makes it local. All our recent decisions are to the effect that if local results either are or may be produced by a piece of legislation, it offends against this provision of the constitution and is void."

But it is plain that this rule of construction will not harmonize with the judicial interpretations given in this state to the corresponding provision of our fundamental law. It has been long settled in this state that an act creating municipal powers may be made dependent for its operative force upon its acceptance by the local popular vote. *City of Paterson* v. *The Society, &c.,* 4 *Zab.* 385; *Paul* v. *Gloucester County,* 21 *Vroom* 585, 604; *Warner* v. *Hoagland, ante p.* 62. And the hypothesis has in no instance been adopted or countenanced, that when a franchise or privilege has been tendered by the legislature to every locality, such tender is special or local because it may not be universally accepted. There is no prohibition in the constitution against the enactment of a general law which may, by possibility, produce local results. If we were to accept the doctrine that the effect that may result from a statute is the test of its constitutionality, it would appear to be impracticable to offer privileges to these municipalities, and every law to affect them would of necessity have to be a mandatory regulation. In every statute conferring franchises upon these public bodies to be used or not used at will, there is a potentiality that the result will be variant in different localities. A power to borrow money for a public purpose might be resorted to in some places and not in others, and hence dissimilar local effects would be produced. Under the rule as claimed it would be difficult to justify the grant to these municipalities of the prerogative of local legislation, as the obvious result is that no two localities will be subject to the same code of local laws. It seems to be manifest that a general law may, under some circumstances, produce a result local or special, but we find no constitutional inhibition against such legislation. If

an act, from its inherent force and scope, must necessarily produce a local and not a general result, or if it be illusively contrived for that purpose, it will fall under constitutional condemnation; and this is the standard that has been applied by the courts of this state. Nor can it escape observation that if the other and opposite theory were to prevail, this singular situation might in some instances be presented of an act being declared to be void that was both general in its scope and purpose, and which in point of fact had produced, not a local or special, but a general result, as, for example, if the present act had been accepted by all the cities of the state; and yet, according to the doctrine contended for, it would be necessary to declare the act invalid, inasmuch as there was inherent, in its constitution, the possibility of a different result.

But we have said that if an act be framed for a general purpose, and which is calculated to effect that end, such statute will not be unconstitutional for the reason that, in its execution, its entire object may not be effectuated.

And from this principle it follows, as an unavoidable corollary, that the limitation in point of time for the adoption of the privileges of this law, cannot be regarded as an invalidating circumstance. The statutory language in this respect is, that no election shall be held under its provisions after the 1st day of October, 1890. It is true, that this provision may eventuate in the production of different local results, but such outcome is not the necessary effect of the law, and there is no indication that such an end was in view. This law is capable of coming into operation within the time prescribed, in every city in the state; it is, therefore, within the meaning of the constitution, a general and not a local act, for, as has been just said, it must be regarded either as general or special at the time of its enactment, and it is not to be ranked in the former class by reason of the fact of its subsequent general adoption, nor in the latter class because of its partial rejection.

In addition to these considerations, it seems to us that the question above discussed must be regarded as *res adjudicata* in this state. In the recent decision of the Court of Errors

in the cases arising under the act of 1888, regulating the sale of ardent spirits, the rule was practically settled that it was the scope and object of a legislative act that constituted the test of its generality, and not the results that possibly might ensue in the course of its execution. The law referred to was declared to be general, because it gave to each of the counties of the state the right to decide for itself whether it would or would not permit the designated liquors to be retailed within its domain, and although it was manifest that different results were likely to obtain in the counties, the constitutionality of the law was maintained.

In the opinion of the court, the act in question is not in any respect out of harmony with the constitution of the state.

The next contention to be considered relates to the election which has been held in Jersey City under the authority of the statute in question.

Several objections have been urged by counsel against the legality of that proceeding.

First, it is insisted that the statute was not properly submitted according to its own directions to the popular vote. In this respect, the statutory authorization is "that the board of aldermen or common council of any city may, by resolution, or the mayor of any city may, by proclamation, submit the question of the acceptance or rejection of this act to the voters of such city at any general or charter election to be held therein." In the present instance, the mayor being temporarily absent from the state, the president of the board of aldermen performed this function. By the charter of Jersey City, it is provided "that in case of the absence of the mayor from the city,   *   *   *   the president of the board of aldermen shall be invested with the power and authority of the mayor until either the mayor resumes his duties," &c. It is manifest that under the designated conditions it was the legislative intent to confer on the president of the board of aldermen not only a part, but the whole of the power resident in the chief executive of the city; he was empowered to do everything that the mayor, by virtue of his office, could do;

and the president of the board of aldermen thus becomes, in the specified contingency, mayor of the city *pro tempore.* This is the usual provision to be found in most municipal charters; and there seems to be no ground for an inference, from the language of the statute we are now considering, that the law makers designed to confer the power in question only on those of that class of officials who had been elected to the position, to the exclusion of those persons who had come to it by substitution and by the appointment of the charter. There appears to be nothing in the nature of the authority bestowed, nor in the terms in which the grant is expressed, that, in any degree, intimates that the prerogative in question is to be confined to a certain class of the incumbents of the mayoralty, while, in point of fact, there is in this law a quite plain intimation that the legislature, when it intended to discriminate between the permanent and the temporary mayor, thought it necessary to do so in express terms. In the twentieth section of this act there is a provision to the effect that none of the appointments authorized by the statute to be made by the mayor shall be made by "any officer acting in the absence or disability of the mayor." The act, by an antecedent clause, had vested the appointing power in the municipal executive by his designation of "mayor," and unless such designation, by its intrinsic force, would, in legislative estimation, have embraced not only the permanent mayor, but also the official who, in his absence, was invested with the authority of the office, the prohibitory declaration in the clause just quoted is mere surplusage.

In view of this legislative action, and in consideration of the fact that by the charter of the city the mayor *pro tempore* is clothed, when legally in office, with all the powers and faculties of the municipal executive, it does not seem reasonable to believe that it was the design of the law makers, when they declared that the election in contemplation might be called by the mayor, to exclude from such function the person who, although he had not been elected to the office, was *de*

*jure,* and by appointment of the charter, acting mayor of the city.

On this head our conclusion is, that under the existing circumstances, the president of the board of aldermen had the legal authority to proclaim the election in question.

It is not necessary, therefore, to discuss the subject argued by counsel relative to the efficacy of the statute which was subsequently passed for the purpose of validating this action of the acting mayor of the city.

A second objection to the preliminaries of the election under examination is, that the president of the board of aldermen in his proclamation misrecited, in an important particular, the act that was submitted to the voters for acceptance or rejection.

The draft of this act, as it stood originally before the legislature, contained, at the close of section 2, the declaration that "no more than two tax commissioners so appointed shall be from the same political party," but that regulation was struck out before its final passage. By inadvertence the clause thus eliminated was retained in the act as recited in the proclamation calling the election, and it is argued that this mistake vitiates the entire electoral procedure.

This position appears to us extravagant and untenable. The statute does not require its publication as an antecedent to the election, and in the proclamation it is referred to and designated by its title and the date of its enactment, and it would be singular indeed, if, by a mistake of an official, in the doing of an entirely superrogatory act, an election relating to a matter of public importance, and in which the people at large have an interest, should, *ipso facto,* be annulled.

The legal rule in matters of this nature is, that in order to invalidate the procedure the error complained of in the given case must appear from the proofs, or by necessary intendment, to have so affected the election as to have changed its result. In the case before us, there is nothing to indicate that the mistake referred to, and which related only to a single class of officials, did, in point of fact, affect this election to the extent

of a single vote.   On such a subject, the court is not permitted to indulge in a speculation resting altogether in the air.

With respect to the objection touching the publication of the notice of the election, we are of opinion that it conformed to the statutory direction.

Nor, after careful examination, have we found the existence of any radical imperfection in the act auxiliary to the one just disposed of, and by authority of which this court is now in session.   The law referred to is entitled "A supplement to an act entitled 'An act concerning the government of cities of the state,'" approved April 6th, 1889, such supplement having been passed on the 19th of April, in the same year.   The general object of this supplementary legislation is to settle expeditiously and in a summary way, all controversies arising which concern the rights or title of any person who has been appointed by a mayor of a city to office by virtue of the primary act.   The scheme thus put on foot consists in a requirement that the chief justice of this court, on the application of any mayor, shall convoke a Supreme Court to hear and decide such litigation, and shall superintend and adjust the pleadings, so that the proper issue shall be formed.   There is a provision that all parties claiming any right, title or interest in the office in dispute, shall be brought in and made parties to the record.

In this procedure we do not find anything that is calculated to deprive these litigants of any substantial right.   They are plainly entitled, by force of the system thus contrived, to all the rights and privileges that appertain to the trial of official title by virtue of the writ of *quo warranto*.   The jurisdiction in both procedures belongs to the same tribunal; and if these litigants had been at issue on any matter of fact, and either of them had demanded a trial by jury, such trial would have been directed by the court, for, as the legislative direction is for the court to try the case, the necessary implication arises, that the procedure is to be conducted in the ordinary mode. The parties have formed, by mutual arrangement, their own issues; have taken testimony to their satisfaction, and, with-

out asking a trial by the country, have submitted, after argument, their litigation to this court for its adjudication. It seems obvious, therefore, that none of these contestants can complain that they have not had every advantage and safeguard which they would have possessed if the procedure had been according to the course of the common law.

The other questions presented in the arguments of counsel have been considered, but have not appeared to us to be of sufficient solidity to require special discussion.

In fine, in our opinion, judgment of ouster should be entered against these incumbents who are holding possession of these offices by force of an election or appointment under the old city charter.