MURPH v. LANDRUM.

COX v. HODGES.

COWARD v. BLACKWELL.

WIER v. WALKER.

LIGON v. BURRIS.

PICKENS CO. v. JONES, COMPTROLLER.

OCONEE CO. v. SAME.

AULL v. SAME.

1. CONSTITUTION—DISPENSARY—TAXES—STATUTES.—The provision in the amendment of 1904 (24 Stat., 485,) to the Dispensary Law, commonly known as the "Brice Act," levying a tax of one-half of a mill on those counties voting out the dispensary to enforce the dispensary law therein, does not violate the constitutional provision requiring a uniform and equal rate of taxation, because it does not levy such tax on two counties which have never had dispensaries. The provision may be classed under Court expenses, litigation or ordinary county expenses, which the General Assembly by art. X., sec. 6, of the Constitution, is empowered to authorize a county to levy taxes for.

2. IBID.—IBID.—IBID.—IBID.—SCHOOL FUNDS.—So much of this act as provides that a county voting out a dispensary should not thereafter receive any part of the surplus that may remain of dispensary school fund after deficiencies in county school funds have been made up violates art. XI., sec. 12, of the Constitution, in that the apportionment is not within the principle contemplated in the Constituion, but this portion of the act being separable from the remainder its adjudication as unconstitutional does not invalidate the other portions of the act.

3. IBID.—IBID.—THE ACT is not violative of art. III., sec. 34, in that it is a special law where a general law could be made applicable, as it is a general law with special provisions.

Proceedings for injunction in the original jurisdiction of the Court: (1) W. W. Murph against B. G. Landrum *et al.;* (2) Louis B. Cox against James Hodges *et al.;* (3) Jos. W. Coward against J. H. Blackwell *et al.;* (4) John A. Weir against F. P. Walker *et al.;* (5) Robert E. Ligon against F. H. Burris *et al.;* (6) Pickens County against A. W. Jones, as Comptroller General; (7) Oconee County against A. W. Jones, as Comptroller General; (8) Adam L. Aull against A. W. Jones, as Comptroller General.

*Messrs. Bellinger & Welch,* for petitioners in all the cases, except in Weir against Walker, *Mr. Jno. G. Capers* appeared with them; and in Coward against Blackwell, *Messrs. Lee & Askins* and *Jno. G. Capers* appeared with them.

*Messrs. Cole L. Blease* and *R. J. Jaynes,* contra, in all cases, except in Coward against Blackwell, Weir against Walker and Ligon against Burris, *Attorney General Youmans* appeared for respondents.

January 14, 1907. The opinion of the Court was delivered by

MR. JUSTICE JONES. This Court, on the 12th day of January, 1906, filed the following judgment in the above stated cases, which were heard together:

"In each of these cases, brought in the original jurisdiction of this Court, the question is raised as to the constitutionality of the act commonly known as the Brice act, approved 25th of February, A. D. 1904, amending section 7 of the general dispensary law, approved March 6th, 1896.

"After careful consideration, this Court is of the opinion that said act is not unconstitutional on any of the grounds alleged, except in so far as said 'Brice Act' declares that, any county voting out a dispensary shall not, hereafter receive any part of the surplus that may remain of the dispensary school funds after the deficiencies in the various county school funds have been made up as provided by law.'

"While the Court considers this provision unconstitutional, the Court is of the opinion that it is separable from the remainder of the act and that said act stands as constitutional with this provision treated as stricken out.

"This conclusion renders it necessary to set aside the temporary injunction granted in the first five above entitled cases restraining the closing of the dispensaries therein mentioned, and also that the temporary injunction granted in the remaining three above entitled cases restraining the Comptroller General from drawing his official warrant for the several sums arising from the surplus of the dispensary fund as therein mentioned be dissolved and the Comptroller General left free to disburse the said fund as it would have been disbursed before the enactment of the said Brice act, and it is so adjudged.

"The reasons for these conclusions will be stated in an opinion hereafter to be filed.

"Y. J. POPE, C. J.
"EUGENE B. GARY, A. J.
"IRA B. JONES, A. J.
"C. A. WOODS, A. J."

In the case first named above, a resident taxpayer in the county of Spartanburg sought to enjoin the county board of control of said county from closing the dispensaries therein,

pursuant to the resolution of an election held in said county on November 7th, 1905, under the Brice law, voting out the dispensary.

In the second case, a resident taxpayer of Greenville County sought to enjoin the county board of control of that county from closing the dispensaries therein, as the result of an election held in said county on November 14th, 1905, under the Brice law, voting out the dispensary.

In the third case, a resident taxpayer of Williamsburg County sought to enjoin the county board of control of that county from closing the dispensaries therein, as the result of an election under the Brice law, held in that county on November 21st, 1905, voting out the dispensary.

In the fourth case, a resident taxpayer of Edgefield County sought to enjoin the county board of control of that county from closing the dispensaries therein, as the result of an election under the Brice law, held in that county on December 7th, 1905, voting out the dispensary.

In the fifth case, a resident taxpayer of Anderson County sought to enjoin the county board of control of that county from closing the dispensaries therein, as the result of an election under the Brice law, held in that county on November 25th, 1905, voting out the dispensary.

In the sixth case, named above, Pickens County sought to enjoin the Comptroller General of the State from apportioning the surplus dispensary funds among those counties retaining the dispensary, including Marlboro and Greenwood, which had no dispensary, to the exclusion of Pickens County, which had voted out the dispensary, and to require proper apportionment of said funds to Pickens County.

In the seventh case, Oconee County likewise sought to enjoin the Comptroller General upon a similar state of facts.

In the eighth case, a resident taxpayer of Newberry County, having children entitled to attend the common schools of that county, likewise sought mandatory injunction against the Comptroller to require due apportionment of the

surplus dispensary funds to Newberry County, which had voted out the dispensary.

These cases assail the constitutionality of the Brice law on the following grounds:

1. That it violates art. I., sec. 5, of the Constitution, in depriving petitioning citizens and taxpayers of property without due process of law and denies them the equal protection of the law: (a) in levying a tax to defray expenses of enforcing a general State law in counties voting out the dispensary and exempting from such levy other counties not voting out the dispensary, including Marlboro and Greenwood, which never had a dispensary; in violation, also, of art. X., sec. 1, of the Constitution, providing for a uniform and equal rate of taxation; (b) in depriving any county voting out the dispensary from receiving any portion of the surplus funds that may remain of the dispensary school funds after deficiencies in the various county school funds have been made up, and leaving said surplus to be distributed among counties retaining the dispensary, and in Marlboro and Greenwood Counties, which had never established a dispensary therein; thus, also, violating art. XI., sec. 12, of the Constitution, declaring that such surplus "shall be devoted to public school purposes and apportioned as the General Assembly may determine;" (c) in that it is a special law concerning a subject where a general law could be made applicable, in violation of art. III., sec. 34, of the Constitution.

Section 7 of the dispensary act of 1896, 22 Stat., 128, incorporated as section 563 of the Criminal Code of 1902, originally read as follows:

"Sec. 7. There may be one or more county dispensers appointed for each county, the place of business of each of whom shall be designated by the county board, but the State Board of Directors must give consent before more than one dispenser can be appointed in any county, and when the county board designates a locality for a dispensary, twenty days' public notice of which shall be given, it shall be com-

petent for a majority of the voters of the township in which such dispensary is to be located to prevent its location in such township by signing a petition or petitions, addressed to the county board, requesting that no dispensary be established in that township. The county board may in its discretion locate a dispensary elsewhere than in an incorporated town in the counties of Beaufort and Horry, and no others except such as are authorized by special act of the General Assembly : *Provided, however*, That any county, town or city wherein the sale of alcoholic liquors was prohibited by law prior to July 1st, 1893, may secure the establishment of a dispensary within its borders in the following manner : upon petition signed by one-fourth of the qualified voters of such county, or town, or city wishing a dispensary therein being filed with the county supervisor, or town or city council, respectively, they shall order an election submitting the question of dispensary or no dispensary to the qualified voters of such county, or town, or city, which election shall be conducted as other special elections ; and if a majority of the ballots cast be found and declared to be for a dispensary, then a dispensary may be established in said county, town or city : *Provided,* That dispensaries be established in the counties of Williamsburg, Pickens and Marion, and at Seneca and other towns now incorporated in Oconee County, without such election, on compliance with the other requirements of this chapter : *Provided,* That nothing in this chapter contained shall be so construed as to prohibit persons resident in counties which shall elect to have no dispensary from procuring liquors from dispensaries in other counties, or county dispensers from shipping same to their places of residence under proper labels or certificates : *Provided, further,* That nothing in this chapter shall be construed to repeal an act entitled 'An act to allow the opening of dispensaries in Pickens and Oconee Counties,' approved December 18th, 1894.' "

This section, by the amendatory act of February 25th, 1904, 24 Stat., 485, commonly known as the Brice law, was

stricken out and the following inserted in lieu thereof, with a provision repealing all acts or parts of acts inconsistent therewith:

"Section 7. There may be one or more county dispensers appointed for each county, the place of business of each of whom shall be designated by the county board of control, but the State Board of Control must give consent before more than one dispenser can be appointed in any county, and when the county board designates a locality for a dispensary, twenty days' public notice of which shall be given, it shall be competent for a majority of the qualified voters of the township in which such dispensary is to be located to prevent its location in such township. A dispensary may be located elsewhere than in an incorporated town in the counties of Beaufort and Horry, and no others except such as are authorized by special act of the General Assembly. Any county may secure the establishment of a dispensary or dispensaries, or the removal of a dispensary or dispensaries within its limits, in the following manner: Upon the petition of one-fourth of the qualified voters of such county for an election upon either the question of the establishment or the removal of dispensaries therein being filed with the county supervisor of each county, he shall order an election submitting the question of 'Dispensary' or 'No Dispensary' to the qualified voters of each county, which shall be conducted as other special elections; and if a majority of the ballots cast be found and declared to be against the dispensary, then no dispensary shall be established therein, and any dispensary already established shall be closed; and if a majority of the ballots cast be found and declared to be for a dispensary, then a dispensary may be established in said county. Elections under this section can be held not oftener than once in four years. No dispensary shall be established in any county, town or city wherein the sale of alcoholic liquors was prohibited prior to July 1, 1893, except as herein permitted: *Provided,* That where dispensaries have been established in such county, town or city, they shall remain as

established until removed or closed, as permitted in this act: *Provided,* A tax of one-half mill annually is hereby levied upon every dollar of the value of taxable property in all counties voting to remove or close the dispensaries, as above provided, for the purpose of defraying the expenses of the enforcement of the dispensary law in said county, under and by direction of the Governor; said tax to be collected as other county taxes and forwarded to the State Treasurer, to be expended, or so much thereof as may be necessary, as now provided by law, for such purposes. Any balance remaining unexpended at the end of the year to be returned by the State Treasurer to the county treasurer of such county for general county purposes, and that the value of all confiscations of contraband goods seized in such county, as determined by the State Board of Directors, shall be paid to the State Treasurer, to be credited to the fund raised by said levy for the enforcement of the law, as above provided. And any amount expended in said county for the enforcement of the dispensary law shall be refunded to the State Treasurer upon collection of the tax above levied. Any county voting out a dispensary shall not thereafter receive any part of the surplus that may remain of the dispensary school funds, after the deficiencies in the various county school funds have been made up as provided by law." .

1. We will first consider the question whether the said act is unconstitutional because it leavies a tax of 1-2 mill on the counties of Spartanburg, Greenville, Anderson, Pickens, Oconee, Newberry, Edgefield and Williamsburg voting out the dispensaray for the enforcement of the dispensary law therein, when no such tax is levied in Greenwood and Marlboro Counties. It is contended that this violates the constitutional provision requiring a uniform and equal rate of taxation, and thus denies the equal protection of the laws to the citizens of the counties subject to that particular tax. This contention is not well founded. It is well settled that a taxing statute does not violate the principle of uniformity and equality when all persons and prop-

erty within the taxing district under similar conditions are taxed alike. Each county in the State is a separate taxing district and has public and corporate purposes to be accomplished by means of taxation limited alone to citizens or property within its territory. Among these purposes is the enforcement of the criminal laws. To this end the rule has long prevailed without question that each county shall build and maintain its own court house and jail, and with the exception of the salaries of one or two State officers, as Judge and Solicitor, pay all the expenses of administering the law within its territory. This purpose may be accomplished either by a general tax for county purposes sufficient to recover the expenses of enforcing the law therein, or by a special tax devoted exclusively or primarily to such particular purpose. The right of the legislature to authorize a county to tax itself for a corporate purpose is unquestionable under art. X., sec. 5, and the only requirement there made as to uniformity is that such taxes must be "uniform in respect to persons and property within the jurisdiction of the body imposing the same," that is, within the county taxing itself.

It is further contended that if the tax in question be regarded as a county tax, then it conflicts with sec. 6, of art. X., of the Constitution, which provides: "The General Assembly shall not have power to authorize any county or township to levy a tax or issue bonds for any purpose except for educational purposes, to build and repair public roads, buildings and bridges, to maintain and support prisoners, pay jurors, county officers and for litigation, quarantine and Court expenses and for ordinary County purposes, to support paupers and pay past indebtedness." It is argued that the special levy "for the purpose of defraying the expenses of the enforcement of the dispensary law in said county under the direction of the Governor," does not fall within any one of the purposes specified and is, therefore, prohibited. We regard the language of this section sufficiently broad and comprehensive to include a county tax for the enforcement of the dispensary law within the county, for it will be

considered to fall within Court expenses, litigation and ordinary county purposes. The result is the same whether we construe the tax as one imposed under the terms of the statute by the county upon itself for a corporate purpose, or as a direct tax by the legislature upon a county voting out a dispensary for the corporate or public purpose of enforcing the law within the county. The power of the legislature to authorize or impose taxation for a public purpose is undeniable, as shown in *State* v. *Whitesides*, 30 S. C., 580, as applied to taxation upon certain townships voting subscriptions to the building of a railroad. The principle of uniformity and equality is subserved when all persons and property in like condition within the particular taxing district assenting to the tax is subject to the tax. If this were a State tax for a general purpose there would be ground to contend that it would not be equal to tax one county and not another, but it is a county tax for county purposes, corporate or public. The statute describes it as a county tax. The fact that the tax is levied to enforce a general statute is of no consequence, since the tax is devoted exclusively to the enforcement of law within the county subject to the tax. A county tax is equal and uniform when applied alike to all persons or property within the county.

No such tax is levied in Greenwood and Marlboro Counties for the simple reason that such counties do not fall within the conditions and classification upon which the tax is imposed, that is to say, Greenwood and Marlboro, never having had a dispensary, have not voted it out, and have not voted to impose such tax under the terms of the act. There is nothing in the act to prevent the establishment of a dispensary in Greenwood and Marlboro; in fact, the act provides a method by which those counties may have a dispensary if the qualified voters so desire. If these counties should establish dispensaries and thereafter vote to remove them, as they may do under the act, then the conditions would exist which would make Greenwood and Marlboro

subject to such tax precisely as all other counties in like situation.

We regard the classification or rule legitimate which imposes the tax in any county which, having a dispensary, votes to remove it and to become subject to the tax for the enforcement of the dispensary law therein. The legislature probably contemplated that it would require special vigilance and greater expenditure of money to enforce the law against illicit traffic immediately after closing all places where liquors were lawfully and customarily sold, than in a county where the prohibition sentiment had long prevailed, and where it was reasonable to suppose the public sentiment would more readily and constantly support the enforcement of law against such traffic. It may also be stated that when a county maintained a dispensary it thereby contributed to the profits out of which the law was enforced, and that when such revenue for the enforcement of the law was withdrawn by the removal of the dispensary, the legislature may reasonably have deemed it proper to substitute the tax for the revenue or income lost by the closing of the dispensary.

2. We next consider whether the statute is unconstitutional by reason of the provision that "any county voting out a dispensary shall not thereafter receive any part of the surplus that may remain of the dispensary school fund, after the deficiency in the various county school funds have been made up as provided by law." We think this provision is unconstitutional.

Art. XI., sec. 12, of the Constitution, provides: "All the net income to be derived by the State from the sale or license for the sale of spirituous, malt, vinous and intoxicating liquors and beverages, not including so much thereof as is now or may hereafter be allowed by law to go to the counties and municipal corporations of the State, shall be applied annually in aid of the supplementary taxes provided for in the sixth section of this article; and if after said application there should be a surplus, it shall be devoted to public school purposes, and apportioned as the General Assembly

may determine: *Provided, however,* That the supplement-
ary taxes shall only be levied when the net income aforesaid
from the sale or license for the sale of alcoholic liquors or
beverages are not sufficient to meet and equalize the deficien-
cies for which the said supplementary taxes are provided."

Sec. 5, of art. XI., declares: "The General Assembly shall
provide for a liberal system of free public schools for all
children between the ages of six and twenty-one years, and
for the division of the counties into suitable school districts,
&c." Sec. 6, of art. XI., relating to education, contains two
rules of apportionment: First, with reference to the three
mill tax for education, the amount collected in each county
is to be kept in said county and shall be apportioned among
the school districts of the county in proportion to the number
of pupils enrolled in the public schools of the respective dis-
tricts; second, with reference to the supplementary tax, to
keep the schools open for the prescribed time throughout the
State, "said tax shall be apportioned among the counties in
proportion to the deficiencies therein." The purpose of the
supplementary tax to the three mill tax, as described in sec-
tion 6, is to keep the public schools open throughout the
State for such length of time in such scholastic year as the
General Assembly may prescribe, and under sec. 12, the
State's share of the net income from the dispensary is to be
applied annually in aid of this supplementary tax, and after
such application the surplus "shall be devoted to public
school purposes and apportioned as the General Assembly
may determine," and this is followed by a proviso that said
supplementary tax shall only be levied when the State's
share of the "net income" is insufficient to meet and equalize
the deficiencies for which the supplementary tax is provided.
The State's net income from the dispensary, therefore, goes
first to each county in such proportion as shall be necessary,
with the three mill school tax and poll tax, to run the schools
of every county for the prescribed time, and the surplus, if
any, is to be apportioned by the General Assembly.

These references show that the Constitution does not authorize any arbitrary division or appropriation of the surplus. The idea of apportionment of the public school fund involves a division or distribution among counties or school districts according to some reasonable and uniform rule. It is true the General Assembly has discretion to determine the particular rule of apportionment, as for example, whether it shall be according to population of school age in the respective counties, or according to the enrollment of pupils, or according to the average attendance, or according to some other rule having reasonable relation to the purpose to be subserved by a public school fund and operating throughout the State upon all counties or school districts falling within the reasonable rule or classification. It is to be conceded that a classification may be adopted so as to deny to one county and give to another, the rule of apportionment must be based upon reasonable difference of condition or situation, as, for example, greater illiteracy or less ability to meet the educational demands in one county than in another, but the rule of apportionment shall have uniform application to all within the designated class. If the failure to contribute to the surplus by reason of having no dispensary, and therefore no dispensary profits, is a reasonable basis of classification, then the equality involved in a just apportionment requires that the act should provide that *all* counties which do not so contribute must be shut out from participation. The act does not provide, but on the contrary, Greenwood and Marlboro which never had a dispensary, are allowed participation in this surplus, when such privilege is denied all counties which by removing the dispensary are in like situation with reference to future profits. With respect to past or accrued profits to which Greenwood and Marlboro did not contribute by operating a dispensary, but to which the counties voting out the dispensary did contribute, the discrimination in favor of Greenwood and Marlboro is all the more evident. This shows that the failure to contribute to the surplus by maintaining a dispensary was not the basis of

3—76

classification adopted by the legislature. The classification or basis of apportionment adopted in this act is to deny the surplus to those counties which vote out the dispensary and give it to those retaining the dispensary or which never had the dispensary. This is purely arbitrary and must fall because wholly inconsistent with the principle of apportionment contemplated by the Constitution.

3. The provision in the statute just considered being obnoxious to the Constitution, the question arises whether the whole act is thereby rendered void. It is an elementary principle that a statute is not necessarily void merely because some of its provisions are unconstitutional. The rule by which this question is to be determined is thus stated in Cooley's Constitutional Limitations, approved in *Utsey* v. *Hiott,* 30 S. C., 360, 9 S. E., 338: "It would be inconsistent with all just principles of constitutional law to adjudge these enactments void because they are associated in the same act, but not connected with or dependent upon others which are constitutional; when, therefore, a part of a statute is unconstitutional that fact does not authorize the Court to declare the remainder void also unless all the provisions are connected in subject matter depending on each other, operating together for the same purpose, or otherwise so connected together in meaning that it cannot be presumed the legislature would have passed the one without the other. The constitutional and unconstitutional provisions may even be contained in the same section, and yet be perfectly distinct and separable, so that the first may stand though the last fall. The point is not whether they are contained in the same section, for the distribution into sections is purely artificial; but whether they are essentially and inseparably connected in substance. If, when the unconstitutional portion is stricken out, that which remains is complete in itself, and capable of being executed in accordance with the apparent legislative intent, wholly independent of that which was rejected, it must be sustained. The difficulty is in determining whether the good and bad parts of the statute are

capable of being separated, within the meaning of this rule. If a statute attempted to accomplish two or more objects, and is void as to one, it may still be in every respect complete and valid as to the other. But if its purpose is to accomplish a single object only, and some of its provisions are void, the whole must fall unless sufficient remains to effect the objects without the aid of the invalid portion, and if they are so mutually connected with and dependent upon each other, as conditions, considerations or compensations for each other, as to warrant the belief that the legislature intended them as a whole, and if all could not be carried into effect, the legislature would not pass the residue independently; then, if some parts are unconstitutional, all the provisions, which are thus dependent, conditionally or connected, must fall with them."

The primary purpose of the Brice act is to provide the method by which counties may remove dispensaries already established, and to provide the means of enforcing the dispensary law in such counties by levying a tax for that purpose, the levying the tax being incident to the removal to meet the conditions arising from such removal. Formerly the dispensary law was in part enforced by expenditures from the State's share of the profits. The removal of the dispensary removed this source of revenue for the enforcement of the law in that county, hence the legislature provided for the tax, a substituted means of enforcing the law. This taxing part of the statute is so intimately connected and interwoven with the scheme of removing dispensaries and consequent diminution of the means of enforcing the law, that if it were unconstitutional the whole act under the principles stated would be made void, since the taxing provision is essentially and inseparably connected in substance with the scheme of removing the dispensaries in view of the conditions created by such removal. But by the same rule the provision as to the distribution of the surplus school funds may go out of the statute and leave it complete and valid. The distribution of the public school fund has no substantial

connection with the removal of dispensaries and policing the counties from which they are removed. The provision may fairly be treated as an independent section relating to a different subject sought to be incorporated in the statute. The mere fact of the association of an invalid provision with a valid provision is not at all conclusive that the legislative intent was to make the provisions inseparable, for if that were so, then no statute valid in part and invalid in part could ever be sustained. The statute relating to two distinct subjects, the removal of the dispensaries and the distribution of the surplus school fund, it is reasonable to say that the legislature intended that the statute should operate as to that subject concerning which its provisions are valid.

4. The contention raised in the pleadings that the Brice act is in violation of art. III., sec. 34, of the Constitution, in that it is a special law where a general law could be made applicable, has not been pressed in argument and is untenable. The law is general, and it is competent under the Constitution to enact special provisions in a general law. *Grocery Co.* v. *Burnett,* 61 S. C., 211, 39 S. E., 331, 58 L. R. A., 687; *Severance* v. *Murphy,* 67 S. C., 410, 46 S. E., 35.