478 S.E.2d 272

Jimmy L. MARTIN, Sr., on behalf of himself and
all others similarly situated, Appellant,

v.

Charles CONDON, in his official capacity as Attorney General of
the State of South Carolina; Burnet R. Maybank, III, in his
official capacity as Director of the Department of Revenue and
Taxation of the State of South Carolina; The Department of
Revenue and Taxation of the State of South Carolina; Barbara
Ruth Morgan, in her official capacity as Second Circuit Solici-
tor and on behalf of all solicitors similarly situated; and
Howard Sellers, in his official capacity as Sheriff of Aiken
County and on behalf of all law enforcement officers similarly
situated, Respondents.

No. 24518.

Supreme Court of South Carolina.

Heard Nov. 14, 1995.
Decided Nov. 4, 1996.
Rehearing Denied Dec. 9, 1996.
Order Denying Rehearing Dec. 9, 1996.

Richard A. Harpootlian, Debra Y. Chapman, and James M. Griffin, Columbia, for appellant.

Attorney General Charles Molony Condon, Deputy Attorney General Treva G. Ashworth, Senior Assistant Attorney General Nathan Kaminski, Jr., Assistant Deputy Attorney General Robert D. Cook, Assistant Attorney General Cameron B. Littlejohn, and Chief Counsel for Revenue Litigation Ronald W. Urban, Columbia, for respondents Condon, Maybank, Department of Revenue and Taxation, and Morgan.

Dennis M. Gmerek, Langley, for respondent Sellers.

MOORE, Justice:

This appeal is from an order finding the local option provisions of the Video Game Machines Act constitutional. We reverse.

## FACTS

Appellant commenced this declaratory judgment action challenging the constitutionality of S.C.Code Ann. §§ 12–21–2806 and –2808 (Supp.1995) of the Video Game Machines Act. Section 12–21–2806 provides for a referendum vote held on a county-by-county basis to determine the legality of non-machine cash payouts from coin-operated video game machines. As a result of the county referenda, these payouts became illegal in twelve of the forty-six counties in the State. Section 12–21–2808 allows for subsequent referenda to raise the same issue in 1998 and years thereafter. The trial judge found these statutes constitutional.

## ISSUE

Are these statutes unconstitutional special legislation under article III, § 34?

## ANALYSIS

Article III, § 34, of our State constitution requires that "where a general law can be made applicable, no special law shall be enacted." The trial judge held the local option laws in this case are not special laws in violation of article III, § 34, but qualify as general laws because they operate uniformly in each county by requiring a referendum vote. Appellant contends this ruling was error because the *effect* of the local option laws is to treat the same conduct differently in each county and the result is unconstitutional special legislation. We agree.

In determining whether an act of the legislature is unconstitutional special legislation, this Court will examine the practical operation of the act as well as its form. *Elliott v. Sligh*, 233 S.C. 161, 103 S.E.2d 923 (1958); *Town of Forest Acres v. Town of Forest Lake*, 226 S.C. 349, 85 S.E.2d 192 (1954). A local option law does not escape scrutiny as special legislation simply because it offers the same option to all counties. Under *Thompson v. S.C. Comm'n on Alcohol and Drug Abuse*, 267 S.C. 463, 229 S.E.2d 718 (1976), the inquiry is whether the *effect* of the local option law is unconstitutional special legislation. The legislation struck down in *Thompson*, as the legislation in this case, offered exactly the same option

to every county in the State. In *Thompson* it was the practical effect of the local option that was determined to be unconstitutional under article III, § 34.[1] Accordingly, we find the trial judge erred in ruling that the local option laws in this case are not special legislation simply because they offer each county the same option.

### What is the effect of § 12–21–2806?[2]

Gaming and betting are activities subject to statewide criminal laws. Under S.C.Code Ann. § 16–19–40 (1985), gaming or betting is unlawful. It is punishable by thirty days' imprisonment or a fine of $100; further, under the same section, keeping a place used for such a purpose is punishable by a one-year term of imprisonment or fine of $2,000.[3] Under S.C.Code Ann. § 16–19–60 (Supp.1995),[4] however, coin-operated nonpayout machines with a free play feature are exempted from § 16–19–40. Under this exemption, non-machine cash payouts are legal. *State v. Blackmon,* 304 S.C. 270, 403 S.E.2d 660 (1991).

The local option law before us in this case, § 12–21–2806, allows the counties to opt out of the exemption provided in § 16–19–60 for these non-machine cash payouts.[5] In the

---

1. The dissent relies on general statements of hornbook law and precedent from other jurisdictions for the proposition that a local option law is a general law unless it would *necessarily* produce a local result. This proposition is insupportable, however, under the precedent of this Court construing the constitution of this State. The legislation struck down in *Thompson* was not necessarily special in its application.

2. Hereafter, for ease of discussion, we refer only to § 12–21–2806 since § 12–21–2808 is the same in substance.

3. Section 16–19–40 is clearly a criminal law. It is found in Title 16, which is entitled "Crimes and Offenses," it provides for imprisonment or fine upon conviction, and it is classified as a Class C misdemeanor under § 16–1–100(C) (Supp.1995).

4. Section 16–19–60 provides as follows:

   Nothing in §§ 16–19–40 or 16–19–50 shall extend to coin-operated nonpayout machines with a free play feature; provided, that nothing herein shall authorize the licensing, possession, or operation of any machine which disburses money to the player.

5. Section 12–21–2806 provides in pertinent part:

counties that voted for the elimination of this exemption, the effect is to criminalize conduct that remains legal elsewhere under State law.

## Application of article III, § 34.

Article III, § 34, prohibits special legislation where the effect is to have different criminal laws in different counties. In *State v. Hammond*, 66 S.C. 219, 44 S.E. 797 (1903), we struck down as unconstitutional a law making it a misdemeanor to dam a stream in certain counties and not others. The special legislation at issue in *Hammond* was impermissible under article III, § 34, precisely because it involved penal sanctions. *Ruggles v. Padgett*, 240 S.C. 494, 126 S.E.2d 553 (1962).

In *Thompson, supra*, we considered the constitutionality of a local option allowing an alcohol treatment program as an alternative to criminal prosecution under the State law regarding public intoxication. We found the local option was unconstitutional special legislation since some local governments elected to participate and others did not, resulting in the disparate application of a statewide criminal law. Similarly, in *Daniel v. Cruz*, 268 S.C. 11, 231 S.E.2d 293 (1977), we struck down a local option allowing any county to opt out of a statewide law permitting fortune-telling because the effect of the local option law was to criminalize fortune-telling in some counties and not in others.[6]

Further, special legislation is unconstitutional under article III, § 34, where another constitutional provision requires uniformity on that subject. *See Thorne v. Seabrook*, 264 S.C. 503, 216 S.E.2d 177 (1975) (special legislation enacting different procedure for returning property in Charleston

---

The cash payouts authorized by Section 16–19–60 of the 1976 Code relating to coin-operated devices may only be continued in any county in South Carolina after June 30, 1995, if a majority of the qualified electors of the county voting in a statewide referendum at the time of the 1994 general election vote in favor of the continued regulation and issuance of these licenses.

6. While the decision in *Daniel v. Cruz* rested on equal protection grounds, the overall purpose of prohibiting special legislation, as conceded by the dissent, is closely related to the equal protection guarantee. *Thompson*, 267 S.C. at 471, 229 S.E.2d at 721.

County violates article III, § 34, in light of other constitutional provision requiring uniformity of property tax laws); *see also State v. McIver*, 270 S.C. 242, 241 S.E.2d 747 (1978) (special legislation regarding jury selection in Florence County violates article III, § 34, in light of other *statute* requiring uniformity); *see generally Knight v. Salisbury*, 262 S.C. 565, 206 S.E.2d 875 (1974) (the constitution is not to be construed item by item and its provisions must be harmonized).

■ Article VIII, § 14(5), of our constitution requires statewide uniformity of general law provisions regarding "criminal laws and the penalties and sanctions for the transgression thereof." [7] Accordingly, local governments may not criminalize conduct that is legal under a statewide criminal law. *Connor v. Town of Hilton Head Island*, 314 S.C. 251, 442 S.E.2d 608 (1994) (municipality cannot criminalize nude dancing where relevant State law does not); *see also City of North Charleston v. Harper*, 306 S.C. 153, 410 S.E.2d 569 (1991) (local government cannot impose different penalties for possession of marijuana than those established under State law). Here, the effect of § 12–21–2806 is to criminalize in twelve counties conduct that is legal under a State criminal law. This effect conflicts with the constitutional requirement of uniformity in the area of State criminal laws and thus violates article III, § 34, as unconstitutional special legislation.[8]

---

7. Article VIII, § 14, provides:

   In enacting provisions required or authorized by this article, general law provisions applicable to the following matters shall not be set aside:
   (1) The freedoms guaranteed every person; (2) election and suffrage qualifications; (3) bonded indebtedness of governmental units; (4) the structure for and the administration of the State's judicial system; (5) criminal laws and the penalties and sanctions for the transgression thereof; and (6) the structure and the administration of any governmental service or function, responsibility for which rests with the State government or which requires statewide uniformity.

8. The dissent attempts to salvage the constitutionality of the local option law in this case by asserting article VIII, § 14, does not apply because the Video Game Machines Act is "primarily a regulatory Act." There is no real question, however, that § 16–19–40 is a criminal law. See footnote 3, *supra*. The dissent relies on cases predating article VIII, § 14, which was ratified as part of the Home Rule Amendment in 1973, to argue that alcohol and gambling have been treated historically

## CONCLUSION

We hold § 12–21–2806 and § 12–21–2808 unconstitutional. In so doing, we express no opinion on the advantages or disadvantages of the video game machine industry. This Court must construe the constitution and laws of this State without concern for political or popular opinion. It is the legislature's responsibility to fashion laws that conform to our constitution or, in the alternative, seek the amendment of the constitution where the will of the people requires it. As it is, we are constrained to follow the constitution and hold this legislation invalid. Further, we note the narrowness of our holding today and emphasize that it does not impact *all* local option laws. Local options that do not infringe areas where uniformity is constitutionally required are not subject to the same analysis we apply here. *See Westvaco Corp. v. South Carolina Dept. of Revenue,* 321 S.C. 59, 467 S.E.2d 739 (1995) (upholding local option sales tax as constitutional).

**REVERSED.**

FINNEY, C.J., and Carol Connor, Acting Associate Justice, concur.

BURNETT, J., concurs in separate opinion.

TOAL, J., dissents in separate opinion.

BURNETT, Justice, concurring:

I concur with the majority's conclusion that S.C.Code Ann. §§ 12–21–2806 and –2808 (Supp.1995) are unconstitutional as violative of S.C.Const. article III, § 34. I write separately to express my disagreement with the majority's reliance on *Connor v. Town of Hilton Head Island,* 314 S.C. 251, 442 S.E.2d 608 (1994).

South Carolina Constitution article VIII, § 14, provides:

In enacting provisions required or authorized by this article, general law provisions applicable to the following matters shall not be set aside:

---

as local concerns. These cases are no longer valid precedent where the uniformity of a criminal law is involved.

(1) The freedoms guaranteed every person; (2) election and suffrage qualifications; (3) bonded indebtedness of governmental units; (4) the structure for and the administration of the State's judicial system; (5) criminal laws and the penalties and sanctions for the transgression thereof; and (6) the structure and the administration of any governmental service or function, responsibility for which rests with the State government or which requires statewide uniformity.

Article VIII, § 14 does not **require** statewide uniformity of general law provisions regarding "criminal laws and the penalties and sanctions for the transgression thereof." Article VIII, § 14, in its preamble, provides that "general law provisions applicable to the following matters shall not be **set aside.**" (emphasis added). The plain meaning of this provision requires that local enactments "set aside" some existing provision of the general law before a constitutional violation occurs. Indisputably §§ 12–21–2806 and –2808, *supra*, effect a setting aside of the general criminal law and are constitutionally prohibited.

However, the majority's reliance on *Connor* is misplaced. *Connor* held, *inter alia*, a municipal enactment prohibiting nude dancing violative of Article VIII, § 14, even though no State law prohibited nude dancing. In my opinion the *Connor* court erred. The court held that conduct which is not unlawful under State laws cannot be made unlawful by local enactment. As laudable as this may be, the court effectively provides that all conduct is lawful unless made unlawful by enactment of the General Assembly. Article VIII, § 14, does not yield to such an interpretation. Local government enactments which are not inconsistent with any State law do not "set aside" any criminal laws enacted by the State. *See Town of Hilton Head Island v. Fine Liquors, Ltd.*, 302 S.C. 550, 397 S.E.2d 662 (1990) (in order to preempt an entire field, an act must make manifest a legislative intent that no other enactment may touch upon the subject in any way).

I would overrule *Connor* insofar as it holds that local governments may not criminalize conduct that is not unlawful under statewide criminal law.

TOAL, Justice, dissenting:

I respectfully dissent. True local option legislation like that at issue here constitutes general law, not special legislation. In finding S.C.Code Ann. §§ 12–21–2806 and –2808 (Supp. 1995) violate Article III, § 34 of the South Carolina Constitution, the majority ignores longstanding South Carolina precedent as well as persuasive authority from jurisdictions throughout the nation. Moreover, it misconstrues the case law and constitutional provisions upon which it relies. I would affirm.

For more than one hundred years, state legislatures have enacted local option statutes relating to the regulation of alcohol and gambling. Not surprisingly, such legislation frequently has been challenged as being violative of equal protection and of various states' constitutional prohibitions on special legislation or delegation of legislative powers. *See, e.g., Harrison v. State,* 687 P.2d 332 (Alaska App.1984) (challenge to local option liquor law on grounds that law violated equal protection); *Clark v. State,* 172 Tenn. 429, 113 S.W.2d 374 (1938) (challenge to local option liquor law on grounds that law was unconstitutional delegation of legislative powers); *State ex rel. McLeod v. Harvey,* 125 Fla. 742, 170 So. 153 (1936) (challenge to local option law regarding slot machines on grounds that law was unconstitutional delegation of legislative powers). The overwhelming weight of precedent nationwide finds local option legislation valid as *general* law. *See* Norman J. Singer, Sutherland Statutory Construction § 40.02 (5th ed. 1993) (summarizing cases holding that local option legislation constitutes general law); 2 Eugene McQuillan, The Law of Municipal Corporations § 4.49 (1988) (summarizing cases holding that local option legislation constitutes general law). Succinctly put, "[l]ocal option legislation, which by its own terms applies only in those parts of the state where it is adopted by local action, is not special if all parts of the state are afforded the same option to adopt it or not." Singer, *supra,* § 40.02.

However, some cases have found local option laws constitute special legislation because the "legislation may take effect in a special or local manner and is not, therefore, inherently general in its operation." 2 McQuillan, *supra,* § 4.49 (listing cases holding local option laws constitute special legislation). This

view is unreasonable. In *In re Cleveland,* 18 A. 67 (N.J.Sup. 1889), *aff'd,* 19 A. 17 (N.J.Err. & App.1890), a New Jersey court addressed the argument that "when a franchise or privilege has been tendered by the legislature to every locality, such tender is special or local because it may not be universally accepted." *Id.* It rejected that argument, reasoning that "if an act, from its inherent force and scope, must *necessarily* produce a local and not a general result . . . it will fall under constitutional condemnation." *Id.* at 68. In other words, if a statute will *necessarily* produce a local result, it is special legislation; if, however, the statute has the potential for a uniform result, as does all true local option legislation, it is general legislation.

South Carolina courts have adhered to the majority rule that local option laws are valid general law. In *Murph v. Landrum,* 76 S.C. 21, 56 S.E. 850 (1907), the plaintiffs challenged the constitutionality of the Brice law under Article III, § 34 of the South Carolina Constitution. The Brice law concerned the establishment of alcohol dispensaries in the counties of South Carolina. The law provided for local option elections to allow voters of each county to determine whether to establish a dispensary in their county. *Id.* at 27, 56 S.E. at 852 (quoting Brice law). A unanimous Supreme Court found the argument that the Brice law violated Article III, § 34 "untenable" and held that "the law is general." *Id.* at 36, 56 S.E. at 855.

Similarly, in *Atkinson v. Southern Express Co.,* 94 S.C. 444, 78 S.E. 516 (1913), this Court stated in dicta that a statute that allowed shipment of alcohol into some counties but not into others would be constitutional. Specifically, the Court quoted *Ohio v. Dollison,* 194 U.S. 445, 24 S.Ct. 703, 48 L.Ed. 1062 (1904) (emphasis added), which states:

> Plaintiff in error urges that to make an act a crime in certain territory, and permit it outside of such territory, is to deny to the citizens of the State the equal operation of the criminal laws; and this he charges against, and makes a ground of objection to the Ohio statute. *This objection goes to the power of the State to pass a local option law, which we think is not an open question. . . .* We said, affirming prior cases, the sale of liquor by retail may be absolutely prohibited by a State. That being so, the power to prohibit

it conditionally was asserted, and the local option law of Texas was sustained.

Although the United States Supreme Court in *Dollison* was discussing the federal Equal Protection Clause, the purpose of S.C.Const. art. III, § 34 parallels that of the Equal Protection Clause. *See Thompson v. South Carolina Comm'n on Alcohol & Drug Abuse*, 267 S.C. 463, 471, 229 S.E.2d 718, 721 (1976) ("Many states have constitutional provisions, similar to ours, prohibiting special laws. The overall purpose of these provisions is closely related to the equal protection guarantee in both constitutions.").

Furthermore, the South Carolina Supreme Court has long recognized that questions concerning alcohol and gambling are uniquely suited to local resolution because of differing conditions and public sentiment. In *Clegg v. City of Spartanburg*, 132 S.C. 182, 128 S.E. 36 (1925), for example, the Court addressed the power of a municipality to prohibit the operation of billiards and pool tables for hire. In upholding the right of the City of Spartanburg to outlaw the maintenance and operation of public pool rooms within its limits, the Court recognized the State's right, when appropriate, to prescribe different laws for different localities within the territory of the State:

> To interpret a license law affecting such business, expressly limited to certain territory, is an indication of the policy that the business might not be prohibited by the State or its duly constituted agencies in other territory, is to ignore the fundamental principle that, subject to constitutional restrictions as to local laws, the authority that legislates for the State at large in the exercise of the police power may prescribe entirely different and inconsistent laws for different localities within the territory of the State, *according as the circumstances of a particular locality or the prevailing public sentiment of a particular section of the State may demand.*

*Id.* at 191, 128 S.E. at 39 (emphasis added); *accord City of Charleston v. Jenkins*, 243 S.C. 205, 209, 133 S.E.2d 242, 244 (1963) (upholding law forbidding alcohol consumption in City of Charleston during certain hours; finding that "[t]he preservation of health, safety, welfare and comfort of dwellers in urban centers of population often requires the enforcement of

very different and usually much more stringent police regulations in such district than is necessary in a State taken as a whole."). I do not cite these cases to suggest that municipalities always may, on their own, absent a general law permitting local option, enact criminal ordinances outlawing alcohol and gambling; S.C.Const. art. VIII, § 14 likely prohibits such criminal ordinances. My point is simply that historically, this Court has found that questions concerning gambling and alcohol implicate important *local* concerns, which should be honored when constitutionally possible.

Given the existing case law and other authority, the constitutionality of the local option law at issue here seems clear. By their terms, sections 12–21–2806 and –2808 apply to all counties in South Carolina. Voters in each county have the same opportunity to determine whether they will have coin-operated nonpayout video games machines, and nothing in the statute precludes a result that is absolutely uniform. Accordingly, the law is a general law.

The majority claims the *effect* of the law is the relevant consideration for purposes of Article III, § 34. In other words, that a law is facially general is not dispositive of whether it constitutes special legislation. Although this is correct as a statement of law, the majority misunderstands the rule and misapplies it in this case.

Virtually all the South Carolina cases applying this rule have concerned laws that facially, at least, were general, but that *necessarily* would have affected various counties differently. *See, e.g., United States Fid. & Guar. Co. v. City of Columbia,* 252 S.C. 55, 165 S.E.2d 272 (1969) (striking down population-based classification the only effect of which was to allow the City of Columbia to charge higher business and professional license taxes than other cities); *Elliott v. Sligh,* 233 S.C. 161, 103 S.E.2d 923 (1958) (striking down population-based classification the effect of which was to make illegal only in Richland and Charleston counties certain kinds of fireworks); *Town of Forest Acres v. Forest Lake,* 226 S.C. 349, 85 S.E.2d 192 (1954) (striking down population-based classification that had effect of making certain law applicable only to Richland County). With population-based classifications, a local effect is inevitable. For that reason, a statute that treats municipalities differently simply based on their populations

must be examined carefully to determine whether the legislation contravenes Article III, § 34. In contrast, it is not inevitable that a true local option law will produce nonuniform results. Accordingly, such a law should be upheld as a general law.

Neither S.C.Const. art. VIII, § 14 nor our decision in *Thompson v. South Carolina Commission on Alcohol & Drug Abuse,* 267 S.C. 463, 229 S.E.2d 718 (1976) compels a different result.[1] Article VIII, § 14 does not even remotely touch upon the issue in this case. Article VIII, § 14 provides: "In enacting provisions required or authorized by this article, *general law provisions* applicable to the following matters shall not be set aside: ... (5) criminal laws and the penalties and sanctions for the transgression thereof...." (emphasis added). This section might be applicable but for the fact that a true local option statute, like that here, is a *general law.* In other words, the local option law at issue contains general law provisions.

Moreover, although there are some incidental criminal penalties attached to unlawful possession or operation of the video games machines at issue in this lawsuit, the Video Game Machines Act, S.C.Code Ann. §§ 12–21–2770 to –2809 (Supp. 1995), is primarily a *regulatory* Act governing questions of licensing and operation of video game machines. The local option statute is part of this regulatory scheme. S.C.Const. art. VIII, § 14 does not concern regulatory statutes. Additionally, one cannot help but wonder why, if article VIII, § 14 is as central to the analysis of the constitutionality of local option legislation as the majority apparently believes, the *Thompson* court made no mention of it. Article VIII, § 14 is not relevant to this case.

*Thompson* is also inapposite. In *Thompson,* we struck down a law that punished criminals differently based on whether the county in which they committed their crime

---

1. The majority cites *Daniel v. Cruz,* 268 S.C. 11, 231 S.E.2d 293 (1977), to support its position that sections 12–21–2806 and –2808 are unconstitutional special legislation. Unlike this case, *Cruz* concerned only the Equal Protection Clause. Nevertheless, the facts in *Cruz* were similar to the facts of the present case. In my opinion, *Cruz* was wrongly decided. To the extent it is inconsistent with my dissent today, I would overrule it.

participated in certain alcohol treatment programs. One state statute, S.C.Code § 16–558 (*as amended* 1975), provided that any person found in a public place or at a public gathering in a grossly intoxicated condition was guilty of a misdemeanor and was subject to either a fine or thirty days in jail. This statute applied uniformly throughout the state. However, another statute granted immunity to violators of section 16–558 if the county or municipality in which the offense was committed elected to participate in a certain alcohol and intoxication treatment program. In other words, the latter statute did not "change[ ] the criminal law in any municipality or county; rather, it grant[ed] immunity from prosecution and direct[ed] that any municipality or county participating in the Alcohol and Intoxication Treatment Program refrain from enforcing the criminal law as such and, in lieu of prosecution, encourage the violator to voluntarily undergo treatment." *Thompson*, 267 S.C. at 469, 229 S.E.2d at 720–21.

The *Thompson* court found that the latter act, though general in form, constituted special legislation in violation of Article III, § 34 of the state constitution. *Id.* at 472, 229 S.E.2d at 722. The Court found that the legislature could pass a general law prescribing either criminal penalties or treatment for public drunks, but could not allow disparate treatment of persons guilty of the same criminal offense. *Id.*

This case is unlike *Thompson* in several important respects. Most importantly, the local option law at issue here does not allow for disparate treatment of criminals based on the county in which the crime was committed. Instead, it simply allows voters to determine whether possession and operation of coin-operated nonpayout video game machines will be legal in their county. In all counties where such machines are illegal, the criminal penalties are the same. Also, as previously noted, the Video Game Machines Act functions primarily as a regulatory statute; its criminal penalties are merely incidental and themselves serve regulatory purposes.

The majority fails to acknowledge the important distinction between a law that punishes the same crime differently in different locales and one that simply and legitimately allows local communities to determine whether to allow alcohol and gambling. The former kind of law, like that at issue in

*Thompson,* is unconstitutional. The latter kind of law, however, is a long-recognized, valid method for allowing local communities an appropriate degree of self-determination with respect to the regulation of alcohol and gambling. I see nothing in our constitution or case law that invalidates true local option legislation. Moreover, the longstanding nationwide judicial acceptance of local option legislation—even in light of constitutional provisions like article III, § 34—is yet another indication of the validity of such legislation. The majority's position effectively overrules any number of old precedents, most notably *Murph v. Landrum,* while my position requires overruling only one anomalous case, *Daniel v. Cruz.* I would affirm the judgment of the circuit court.

## ORDER

The petition for rehearing is denied.

Further, we deny the motion of South Carolina Association of Counties to intervene. We take this opportunity to emphasize once again that our ruling in this case is a narrow one. Where there is no relevant statewide criminal law, local government may regulate conduct consistent with its constitutional and statutory authority. Moreover, we reject the contention that we have somehow limited the power of the General Assembly to delegate police power to local government. It is completely within the General Assembly's discretion to repeal a statewide criminal law in favor of allowing local government to regulate the conduct in question.

Finally, we deny the motion of South Carolina Department of Natural Resources to intervene. It is axiomatic that the prohibition against special laws found in article III, § 34(IX), of our constitution does not apply where another constitutional provision specifically authorizes a special law. *Ruggles v. Padgett,* 240 S.C. 494, 126 S.E.2d 553 (1962). Article III, § 34, itself empowers the General Assembly to divide the State into zones for the protection of game.