13333

STATE *EX REL.,* DANIEL, ATTORNEY GENERAL, v. KIZER *ET AL.*

(162 S. E., 444)

*Messrs. John M. Daniel, Attorney General, Cordie Page* and *J. Ivey Humphrey, Assistants Attorney General,* for plaintiffs,

January 21, 1932.

The opinion of the Court was delivered by MR. CHIEF JUSTICE BLEASE.

This action, brought in the original jurisdiction of this Court, seeks an injunction to prevent the defendants, either directly or indirectly, from operating, or attempting to operate, or to have others to operate, unlawful slot machines in this State, and also to enjoin them from interfering with the law enforcement officers in .enforcing the statutes of the State relative to unlawful slot machines.

The complaint of the plaintiff, which is of considerable length, briefly summarized, alleges that the defendants and others have been operating, and are continuing to operate, in violation of the law, slot machines within this State; that they have conspired, and are conspiring, to violate the criminal laws regarding slot machines; and that they have been, and are, making a concerted effort to hinder and embarrass the peace officers of the State and to prevent them from enforcing the laws by bringing numerous injunction suits in both the State and Federal Courts.

We gather from the record that the defendants, A. R.

Kizer, J. R. Williams, B. W. Biggs, Robert Harvie, L. D. Goore, O. P. Jamison, L. S. Hand, B. T. Brown, Goore Sales Company, Goore-Manus Company, Dixie Sales Company, and W. D. Kelley, have been properly served with the summons and complaint in the action. Except the parties named, no other person has been served.

The only defendant who has made answer to the complaint is O. P. Jamison. He contends that the machines operated by him are not in violation of law, and that the statutes under which the proceedings are brought, Section 196, Criminal Code of 1922, and Act No. 264, page 367, of the Acts of 1931, are unconstitutional, null and void, in that they are in conflict with the Constitution of this State and that of the United States.

One of the machines operated by the defendant, Jamison, was brought before the Court for inspection and examination. We are convinced that it is an unlawful slot machine under our decision in *Harvie v. Heise, etc., et al.,* 150 S. C., 277, 148 S. E., 66.

The constitutionality of the "Slot Machine Statutes" was recently passed upon by a "Three-Judge Court," in the District Court of the United States for the Western District of South Carolina, in the case of *E. M. Durant, plaintiff, v. N. L. Bennett, Sheriff of Spartanburg County, et al., defendants,* and the case of *A. R. Kizer (one of the defendants here), plaintiff, against the same defendants,* 54 F. (2d), 634. In those cases, the statutes were held to be constitutional; the opinion of Hon. J. Lyles Glenn, United States District Judge, being concurred in By Hon. John J. Parker, United States Circuit Judge, and Hon. H. H. Watkins, United States District Judge.

The temporary injunctions granted in the Federal Court, involving the same kind of slot machines in many instances referred to in this proceeding, were dismissed by the "Three-Judge Court," and the conduct of the slot machine operators, both as to the operation of the machines and the manner in

which they had used and abused the process of the Federal Court, was severely condemned.

This Court is entirely satisfied with the very able opinion of Judge Glenn, which we take the liberty to adopt as our opinion, and a copy of it, which is hereto attached, will be reported.

While this Court dislikes to resort to the harsh remedy of injunction to enforce the criminal laws of the State, and would prefer not to use that process in any way to prevent trial by jury, we are forced to feel that the persons who have been operating unlawful slot machines in this State, including several of the defendants in this action, have shown very little respect for the laws and the Courts; that they have not sought, as they might have done, trial by jury, but themselves have endeavored time after time to prevent such trials by applications for writs of injunction. As pointed out in the opinion of Judge Glenn, if a slot machine operated by one of them is not prohibited by law, the owner or operator has the right to recover in the Courts of this State, under the statutes, such machine, when it has been seized by a peace officer, and he has further redress if his property rights are invaded.

This Court, of course, should not grant injunctions against parties who have not been served with the process in the cause, and to that extent the prayer of the complaint is denied. The defendants who have been served, however, should not continue to operate slot machines in violation of the law, and the injunction as to them, prayed for, is granted.

The opinion of Glenn, United States District Judge, is as follows:

"For the last several years the State of South Carolina has been peculiarly vigilant in its activities to enforce its criminal statutes directed against gambling devices. Particularly have these activities been directed against the operation of so-called slot machines which have been placed in the State and which are undoubtedly operated primarily as gambling de-

vices. It appears that these machines are so constructed as to yield an enormous return to the owners and the local custodians with whom the owners place the machine. In that the machines, so far as outward appearance is concerned, closely resemble innocent vending machines, the determination of the illegality of each particular machine has not always been an easy task. The owners of the machines have sought Court protection in State and Federal Courts alike. Proceedings have been had in the original jurisdiction of the State Supreme Court. See *Harvie et al. v. Heise et al.,* 150 S. C., 277, 148 S. E., 66. But the opponents of the slot machine felt that Section 196 of the Code of Laws of 1922, Vol. 2, was not drastic enough. Accordingly, the Legislature of 1931 passed a very far-reaching statute (37 St. at Large, 367), against all forms of gambling devices, vending machines which could be operated as gambling devices, and all games of chance. It is not necessary to set out the entire statute, as only Section 3 of the said statute is attacked as being violative of the due process clause of the Fourteenth Amendment to the Federal Constitution and of certain provisions of the South Carolina Constitution of 1895. This section is as follows: "That any vending or slot machine, punch board, pull board, or other device pertaining to games of chance, prohibited by this Act shall be seized by any officer of the law and at once taken before any magistrate of the county in which such machine is seized, who shall immediately examine same, and if he is satisfied that such vending or slot machine is in violation of this Act or any other law of this State, he shall direct that said machine be immediately destroyed."

"Since the passage and approval of this statute, the officers of the State, both State and county, have proceeded to seize slot or vending machines which belong to the petitioners in these cases. We refer to the complainants throughout this opinion as petitioners, in that the case is primarily before us on an application for an interlocutory injunction. In that the

application for an interlocutory injunction in each of the cases is directed against State officers, the Governor in one case and the Attorney General in the other, both of whom are officers filling offices created by the South Carolina Constitution, there is no doubt that a case is presented which requires the special statutory Court provided for by Section 266, Judicial Code, Section 380, Title 28 U. S. C. A. Likewise there is a diversity of citizenship, in that the petitioners are both citizens and residents of North Carolina, and we think that the jurisdictional amount is present.

"The only attack on the jurisdiction is made on the ground that there is no showing that any one officer has seized, or is about to seize, machines of the value of $3,000.00. The Attorney General in attacking the jurisdiction relies on *Essman v. Hood* (D. C.), 45 F. (2d), 881. We think, however, that the true test is the value of the property or property rights which the petitioner seeks to protect. Abundant decisions might be cited to sustain this proposition; but, in that they are all recently discussed by the Circuit Court of Appeals of the Fourth Circuit, we simply refer to the case of *Swan Island Club v. Charles Ansell,* 51 F. (2d), 337.

"Furthermore, and absolutely decisive of the jurisdictional question, we point out that in the *Hood case* no State officer was made a party, whereas, here we have the Attorney General in one case and the Governor himself in another. In that the activity of the police officers, of one kind and another, is under the control and supervision of the Governor and Attorney General, the jurisdictional amount is clearly involved as to them. The presence of the jurisdictional amount is so clearly shown by these factors that we do not deem it necessary to discuss that question any further.

"In the separate findings of fact, we have fully set forth a description of the machines and their usual method of operation. It is clear that they are primarily gambling devices in their very nature. They are constructed for the purpose of yielding enormous revenue to

the owners and operators. The testimony shows conclusively that, while on rare occasions the player may win and get considerably more than he puts in, yet over a considerable period of time the machine retains in its own coffers a great majority of the money deposited in the slots. One of the owners admits that he and his local agent received 80 per cent. after a small tube in the machine was filled. The petitioners contend that, as a package of mints or gum is returned each time, if the player so desires, the machine is not a gambling device. They point out that the money paid by the machine is deposited in a small metal box in the rear of the machine. They say that this box may be locked, and that, if locked, the money goes to the machine and not to the player. But, if the box be kept locked and the machine operated, it simply adds to the unlawful earnings of the owner and custodian. The testimony overwhelmingly shows that, where the machines are actually patronized at all, the box is kept unlocked. Indeed, if the player knew that the box was locked and his occasional chance of winning would simply deposit nickles in a locked box, he would not play the machine at all. The petitioners ask for interlocutory injunctions against the Governor, the Attorney General, and the other officers named as defendants. We do not think they are entitled to relief on any grounds. In the first place, we do not think that the petitioners here have any standing in a Court of equity. It is a fundamental rule in equity that he who seeks relief in equity must come into the Court with clean hands. If the petitioners were here with clean hands and where seeking to protect property which the law recognizes and protects as lawful property, a different question might be presented. But the complainants here have come to ask extraordinary relief of a Court of equity to protect property which has already been outlawed by the statutes of South Carolina and by the highest Court of that State. Whatever may be said about the much maligned Section 3 of the 1931 Act, the property of the petitioners involved

here has been denounced by other statutes of the State of South Carolina which are unquestionably valid. In the return verified by the Attorney General and his assistants it is pointed out that these same petitioners were either directly or indirectly before the State Supreme Court in the proceedings referred to. It appears also that these very same parties have procured many temporary restraining orders from the Circuit Judges of the State of South Carolina, and that, when the petitions have been heard on their merits, the owners of the machines have either defaulted or been denied the protection of permanent injunctions. Time after time they have operated for a short time under temporary restraining orders of State and Federal Courts merely until the matter could be heard on its merits. With this showing appearing to the satisfaction of the Court, we unhesitatingly conclude that the petitioners here have not come into this Court with clean hands. A Court of equity will not listen to a man who comes into Court to protect property which has already been outlawed.

"We might dispose of the entire controversy on this ground, and this ground alone. But there are other reasons for which we think it is equally clear that the petitioners should be denied their application for an interlocutory injunction and for the permanent injunction sought by their bills. We think that they have an adequate remedy at law to protect their rights in the property involved. It is perfectly clear that the complainants, if they desire, can protect themselves by seeking a redress through claim and delivery, the South Carolina possessory action by which the possession of personal property is sought. The plaintiffs contend that the remedy of claim and delivery is not open to them. We think that this is, however, an erroneous conclusion which they have drawn from certain of the South Carolina decisions. It is true that in several South Carolina cases it has been held that machines seized as gambling devices by a sheriff were not to be returned to the complainants. But

these decisions are based on the merits, and not on the theory that the action in claim and delivery was not the proper action in which to test the legality of the seizure. In this connection we point out that in the testimony of the petitioners there is no showing that any of the machines have been, or are about to be, summarily destroyed. Certainly so long as the property is in the possession of a sheriff or other peace officer, claim and delivery is available to test the legality of the possession. The case on which the petitioners rely chiefly is that of *Griste v. Burch,* 112 S. C., 373, 99 S. E., 703; but there is no holding in that case that claim and delivery was not the proper action to bring. On the contrary, it is well established in South Carolina, where the possessory action of claim and delivery has a wider use than the replevin statutes have in other jurisdictions, this action may be brought against an officer who has seized property being used in violation of the law. See *Seignious v. Limehouse,* 107 S. C., 546, 93 S. E., 193; *Moore v. Ewbanks,* 66 S. C., 374, 44 S. E., 971; *Davis-McGee Mule Co. v. Marett, Sheriff,* 129 S. C., 36, 123 S. E., 323. We think the true rule on this question is laid down by Mr. Justice Cothran in his opinion in the *Davis v. Marett case:* 'The remedy ( *i. e.,* Claim and Delivery) was recognized in the case of *Seignious v. Limehouse,* 107 S. C., 546, 93 S. E., 193, although the point now raised was not presented in that case. When the statute does not prohibit the proceeding by claim and delivery, and supplies no proceeding by which the owner of property seized and claimed to have been forfeited may have an opportunity to resist the forfeiture, the remedy (*i. e.,* Claim and Delivery) is open.'

"We are not going to put in motion the extraordinary machinery of a Federal Court of equity to protect a man in a right that he can protect by a claim and delivery suit in the State Court.

"In connection with the unclean hands and the bad faith shown by these petitioners, we point out that they have

studiously avoided the claim and delivery proceedings. Likewise they have come dangerously near to contempt of this Court in the use that they have made of the temporary restraining order. The District Judge, who granted the temporary restraining order in the *Durant case* now before us, has shown by the terms of the order itself that he clearly recognized the impropriety of interfering with the State officers. The terms of the order are as follows:

"It is further ordered, adjudged and decreed, That pending the hearing of this Rule and Order to Show Cause, defendants and each of them, their agents, servants and employees, be and they are hereby enjoined and restrained from interfering with, seizing or threatening to seize, confiscate or threatening to confiscate, from taking into possession and before any magistrate in the counties named in said complaint, the property of the plaintiff, and ordering or directing or destroying, or ordering or directing the destruction of said machines, the property of plaintiff, or attempting to molest or interfere with said machines the property of plaintiff as described in the complaint in this suit; provided, that it is the purpose and intent of this temporary restraining order to apply only to the attempted enforcement of Section 3, of the Act known as No. 264 of the Statutes of South Carolina passed at the regular session of the Legislature for 1931, and;

"It is specifically ordered and directed, That this restraining order shall not in any way interfere with or limit the enforcement of any of the other criminal statutes of the State of South Carolina. It is especially pointed out that this temporary restraining order does not in any way interfere with or restrain the defendants herein named from acting under the terms of Section 196, Volume 2, Code of Laws of South Carolina, 1922;

"It is further ordered and adjudged, That the seizure of any of the property described in the bill, filed in this suit, while being actually used as a gambling device within the

meaning of Section 196, Volume 2, Code of Laws of South Carolina, 1922, is not in violation of this order and this order does not prohibit the seizure of machines referred to in the bill if they are actually used as gambling devices."

The force and effect of this order is clearly limited to the application of the procedure outlined by Section 3 of the Act of 1931. The order specifically says that there was no intention on the part of the Court to interfere even for the short period of twelve days, until the statutory Court of three Judges could be convened and the hearing had, with the general enforcement of the criminal law of South Carolina directed against the operation of gambling devices. The terms of the order simply protected the machine from summary destruction on the order of the magistrate. Yet we find that the petitioners upon the issuance of this limited order proceeded to placard their machines, at least those located in Spartanburg County, with a placard which purported to protect the machine from any seizure by the State officers. Yet the evidence of the Spartanburg officers shows that these machines were being operated as gambling devices with back and front doors open in clear violation of the spirit and definite terms of the temporary restraining order issued by the District Judge. Likewise, the other petitioner Kizer had machines in the Western District which were placarded with notices purporting to protect them from seizure by reason of an injunction issued in the Eastern District of South Carolina. Reference to the terms of the injunction shows that there was no intention on the part of the Court in the Eastern District to protect the machines from seizure when operated as gambling devices in violation of the statute law of South Carolina. The petitioners seek to excuse themselves on the ground that they did not know how the local custodians were operating the machines. To us this appears a very flimsy statement which would hardly be borne out by testimony if the investigation had been pushed to that extent. It is plain that the machines, when operated innocently,

bring very little return, but, when operated as gambling devices, the profits are very large. In that we have dismissed the temporary restraining order, the application for interlocutory injunction, and are dismissing the bills in equity themselves, we are not going further into the bad faith of the petitioners; but point out that the use of these placards misrepresenting the terms of the Court orders has come dangerously near to rendering the petitioners and their agents liable to a rule for contempt of Court.

"For all of the foregoing reasons, all of the relief asked by the petitioners must be denied. However, the petitioners have seriously attacked the constitutionality of Section 3 of the Act of 1931; and, while we do not feel that it lies in their mouths to attack the constitutionality of this section in these proceedings, yet we will not hesitate to pass upon this issue.

"There is no doubt that the procedure outlined in Section 3 is very drastic and summary. It provides that the machine may be taken before a magistrate, who shall examine the same, and, if he comes to the conclusion that the machine is a gambling device, he may order it to be summarily destroyed. There is no provision for a hearing by the magistrate. There is no provision for the defendant to test the accuracy or wisdom of the magistrate's decision. It is certainly a drastic remedy. But, when we take into consideration the evil which this statute seeks to remedy, we do not think that it violates the due process clause of the Fourteenth Amendment. As it was said by the Court in *Sentell v. R. R. Co.*, 166 U. S., 698, 17 S. Ct., 693, 41 L. Ed., 1169: 'It is true that under the fourteenth amendment no State can deprive a person of his life, liberty, or property without due process of law; but in determining what is due process of law we are bound to consider the nature of the property, the necessity for its sacrifice, and the extent to which it has heretofore been regarded as within the police power. So far as property is inoffensive or harmless, it can only be condemned or destroyed by legal proceedings, with

due notice to the owner; but, so far as it is dangerous to the safety or health of the community, due process of law may authorize its summary destruction.' *Sentell v. R. R. Co.* (1897), 166 U. S., 698, 705, 17 S. Ct., 693, 696, 41 L. Ed., 1169.

"The Federal Courts are slow to interfere with the exercise of police power by the State. Ever since *Lawton v. Steele* (the Fish Net Case), 152 U. S., 133, 14 S. Ct., 499, 38 L. Ed., 385, the Federal Courts have strictly refrained from interfering with State officers in the enforcement of laws passed to protect the natural resources of the State, the health of the community, and the morals of the people. As is said in *Lawton v. Steele,* 'The extent and limits of what is known as the 'police power' have been a fruitful subject of discussion in the appellate Courts of nearly every State in the Union. It is universally conceded to include everything essential to the public safety, health, and morals, and to justify the destruction or abatement, by summary proceedings, of whatever may be regarded as a public nuisance.' Truly, if the object to be accomplished is conducive to the public interests, it (the Legislature), may exercise a large liberty of choice in the means employed. 'A large discretion is necessarily vested in the legislature to determine, not only what the interests of the public require, but what measures are necessary for the protection of such interests.' *Lawton v. Steele,* 152 U. S., 133, 14 S. Ct., 499, 38 L. Ed., 385.

"The Massachusetts Court has pointed out that 'the difficulty of enforcing the statutes against gaming is so great that the legislature has found it necessary to make stringent laws.' *Commonwealth v. Gaming Implements,* 155 Mass., 165, 29 N. E., 468.

"We think that the petitioners' machines constitute, as one Court has clearly observed, 'a menace to the welfare of the community, and invite breaches of the law.' *Mullen v. Moseley,* 13 Idaho, 457, 90 P., 986, 990, 12 L. R. A. (N. S.), 394, 121 Am. St. Rep., 277, 13 Ann. Cas., 450. It is

not, then, surprising to find it almost universally held that a statute providing for the summary forfeiture and destruction of gambling apparatus such as petitioners' 'is a valid exercise of the police power of the State, and is not in conflict with the Constitution, as depriving the owner of his property without due process of law.' Note, 12 L. R. A. (N. S.), 394.

"If destruction öf a fish net which could only be used to destroy the natural resources of a State is to be allowed by a game warden without resort to a magistrate, certainly a slot machine may be ordered to be destroyed by a magistrate as being a nuisance in itself. Certainly the Legislature of South Carolina, by requiring the peace officer to go before a magistrate, meant to put some restraint upon the peace officer who represented the executive authority of the State. The magistrate, although the brunt of many good-humored pleasantries, is a judicial officer; and the Legislature of South Carolina, by requiring the assent of a judicial officer before the property could be destroyed, was throwing a safeguard around the property which was not provided by the New York Legislature in the *Fish Net case*. We are not justified in assuming that a magistrate would unreasonably decide that an innocent piece of property was a gambling device if the facts did not warrant such a conclusion. As has been pointed out by the Supreme Court in many cases, a statute must be construed in the light of the evil it seeks to remedy and in the light of the condition obtaining at the time the statute was passed. It is pointed out that in South Carolina, a small, compact thickly settled State with good roads, there is an increasing tendency to have fewer and more experienced magistrates. The statutes of the State show a constant tendency on the part of the county delegations to cut down the number of magistrates and provide more compensation, and thereby secure better men to fill these offices. These magistrates are accustomed to try cases involving rules of evidence, burdens of proof, and the other

fundamental principles which govern judicial decisions. Therefore the presumption is that a magistrate will act in accordance with rules of law and not contrary to them. Finally, we point out that, when this statute is seen in the light of the evil it seeks to remedy, the nature of the machines which are authorized to be destroyed, and the fact that the evidence shows that there has actually been no high-handed and unlawful destruction of the petitioners' property, we feel constrained to hold that the section of the statute is not violative of the due process clause of the Fourteenth Amendment. Certainly the actual application of this section which is being made to the petitioners' property is not an unconstitutional exercise of police power on the part of the State of South Carolina. It is contended that officers and magistrates might apply this drastic power to property inherently innocent, but no such facts appear here. If they did, the owner of such innocent property would have his remedy in the Courts. The South Carolina Legislature, in its desire to protect the young boys and girls from education in the general art of gambling, did not intend by the passage of this Act to put peace officers and magistrates above the law. We live in a country where the law is supreme, and this particular statute would never be held by a Court to warrant unlawful and high-handed destruction of innocent property by peace officers and magistrates.

"For all of these reasons, we think that the relief sought by the petitioners in both cases should be denied, and the bills in equity should be dismissed."

MESSRS. JUSTICES STABLER, CARTER and BONHAM concur.

MR. JUSTICE COTHRAN did not participate on account of illness.