534 S.E.2d 270

WESTSIDE QUIK SHOP, INC., Phelix C. Byrd, Ree M. Byrd, and Winner's Pot of Gold Hot Spot, Inc., Plaintiffs,

v.

Robert M. STEWART, Sr., in his official capacity as Chief of the State Law Enforcement Division; and Charles M. Condon, in his official capacity as Attorney General for the State of South Carolina, Defendants.

No. 25158.

Supreme Court of South Carolina.

Submitted June 20, 2000.

Decided June 21, 2000.

298

George M. Hearn, Jr., of Hearn, Brittain & Martin, P.A., of Conway; John L. Napier, of Winston & Strawn, of Washington, D.C.; and Roger J. Marzulla and Nancie G. Marzulla, both of Marzulla & Marzulla, of Washington, D.C., for plaintiffs.

Attorney General Charles M. Condon, Assistant Deputy Attorney General Robert D. Cook, Assistant Deputy Attorney General J. Emory Smith, Jr., Senior Assistant Attorney General Nathan Kaminski, Jr., Assistant Attorney General Christie Newman Barrett, and Richard H. Seamon, of University of South Carolina School of Law, all of Columbia, for defendants.

MOORE, Justice:

Plaintiffs are the owners and lessees of video gaming machines used for profit in their places of business. On May 25, 2000, plaintiffs filed this action in circuit court challenging the constitutionality of 1999 S.C. Act No. 125 which, among other

things, makes possession of these machines illegal as of July 1, 2000. Plaintiffs seek an injunction against enforcement of the Act claiming it effects an unconstitutional taking of their property without just compensation.

Because of the great public interest in finally determining this matter, we accepted the case in our original jurisdiction and ordered expedited briefing. Having considered the extensive briefs of the parties, we hold compensation is not constitutionally required under either our Federal or State Constitutions. Accordingly, we deny the injunction.

## BACKGROUND

For nearly seventy years, gaming machines have been illegal in this State and subject to forfeiture as contraband. In 1931, the General Assembly enacted a comprehensive statute outlawing the possession of all forms of gambling devices, including vending machines that could be operated as gambling devices. 1931 S.C. Act No. 368.[1] In 1982, however, the General Assembly enacted an exemption for "video games with free play feature" which were a relatively recent technological development. 1982 S.C. Act No. 466.[2] In *State v. Blackmon*, 304 S.C. 270, 403 S.E.2d 660 (1991), we held nonmachine cash payouts from these video gaming machines were legal under a pre-existing statute, S.C.Code Ann. § 16-19-60 (Supp.1999).[3]

In the ensuing years, our State witnessed the dramatic growth of video gaming into a multi-billion dollar industry that became the subject of much public debate. Despite the repeated introduction of legislation aimed at repealing the exemption for video gaming machines,[4] no legislation was

1. Codified as 1932 Code of Laws § 1301-A.

2. Codified as S.C.Code Ann. § 52-15-10 and subsequently recodified as § 12-21-2710. In 1997, this section was amended to limit the exemption for video games to those "which meet the technical requirements provided for in Section 12-21-2782 and Section 12-21-2783." 1997 S.C.Act No. 155, Pt. II, § 54(B).

3. Repealed effective July 1, 2000, by 1999 S.C.Act No. 125, Pt. I, § 8.

4. *See, e.g*, H.R.3823, 108th Leg., 2d Sess. (1989) (bill to repeal § 16-19-60); H.R.3867, 108th Leg., 2d Sess. (1989) (bill to make it unlawful to

passed until 1993. In July of that year, the General Assembly provided for local option referenda to be held on a county by county basis to determine whether nonmachine cash payouts for video gaming should become illegal. 1993 S.C.Act No. 164, Pt. II, § 19H. In November 1994, twelve counties voted in favor of making such payouts illegal. The local option referenda, however, were ultimately struck down by this Court in 1996 as unconstitutional special legislation. *Martin v. Condon*, 324 S.C. 183, 478 S.E.2d 272 (1996). Cash payouts once again became legal throughout the State.

In November 1998, this Court upheld the statutory scheme regulating video gaming machines against a challenge that this type of gaming device constituted an unconstitutional lottery. *Johnson v. Collins Entertainment Co.*, 333 S.C. 96, 508 S.E.2d 575 (1998).

Finally, in an extra session called by the Governor in June 1999, the General Assembly enacted 1999 S.C.Act No. 125 providing for a November referendum to be held statewide to decide the fate of video gaming. Voters would be asked whether cash payouts for video gaming machines should continue to be allowed after June 30, 2000. If voters answered "no," Part I of the Act would become effective July 1, 2000. This part of the Act repeals § 16–19–60, which allows nonmachine cash payouts, and amends S.C.Code Ann. § 12–21–2710 (2000) to remove the exemption for video gaming machines, thereby rendering the possession or operation of these machines illegal.[5] Further, under S.C.Code Ann. § 12–21–2712 (2000), these machines are then subject to forfeiture and destruction by the State.[6]

---

have or to operate a machine for playing games which utilizes a deck of cards); H.R.3104, 109th Leg., 1st Sess. (1991) (bill to repeal § 16–19–60).

5. Section 12–21–2710, as amended effective July 1, 2000, provides in part:

It is unlawful for any person to keep on his premises or operate or permit to be kept on his premises or operated within this State any vending or slot machine, or any video game machine with a free play feature operated by a slot in which is deposited a coin or thing of value....

6. Section 12–21–2712, as amended effective July 1, 2000, provides:

Before the referendum was held, an action was brought challenging its constitutionality. After taking the case in our original jurisdiction, in October 1999, this Court struck down the referendum but severed it from the remaining parts of the Act. Specifically, we found Part I, which bans the possession or operation of these machines, to be a free standing legislative enactment and therefore valid. *Joytime Distrib. and Amusement Co. v. State,* 338 S.C. 634, 528 S.E.2d 647 (1999). Accordingly, on July 1, under §§ 12–21–2710 and –2712, these machines will become contraband subject to forfeiture and destruction regardless of their use or operability. *See State v. 192 Coin–Operated Video Game Machines,* 338 S.C. 176, 525 S.E.2d 872 (2000).

More than seven months after our decision in *Joytime* and less than six weeks before the impending ban will go into effect, plaintiffs commenced this action.

## ISSUES

I.   Are plaintiffs entitled to compensation for the forfeiture of their video gaming machines?

II.  Are plaintiffs entitled to compensation for their loss of business?

III. Are plaintiffs entitled to compensation for the real property upon which their businesses are located?

## DISCUSSION

### I.

■ Plaintiffs contend Act. No. 125 should be enjoined because it effects a taking of their video gaming machines without compensation. We find plaintiffs are entitled to no compensation because their machines are lawfully subject to forfeiture as contraband.

---

Any machine, board, or other device prohibited by Section 12–21–2710 must be seized by any law enforcement officer and at once taken before any magistrate of the county in which the machine, board, or device is seized who shall immediately examine it, and if satisfied that it is in violation of Section 12–21–2710 or any other law of this State, direct that it be immediately destroyed.

■ The forfeiture of contraband that comports with the Fourteenth Amendment's Due Process Clause [7] is not a compensable taking under the Takings Clause of the Fifth Amendment.[8] *Bennis v. Michigan*, 516 U.S. 442, 452, 116 S.Ct. 994, 134 L.Ed.2d 68 (1996); *see also United States v. $7,990.00 in U.S. Currency*, 170 F.3d 843 (8th Cir.1999). Nor is it a compensable taking under the corresponding provision of our State Constitution, article I, § 13. *Myers v. Real Property at 1518 Holmes Street*, 306 S.C. 232, 411 S.E.2d 209 (1991).

Under § 12–21–2712, gaming machines that are operated or possessed in violation of § 12–21–2710 are subject to forfeiture as contraband *per se*. *192 Coin–Operated Video Game Machines, supra.* Act No. 125 amends § 12–21–2710 to include the video gaming machines in question which will become subject to forfeiture under § 12–21–2712 as of July 1, 2000. We have already determined that the forfeiture of gaming machines pursuant to these statutes accords with due process requirements. *Id.*[9] We see no reason to answer this question differently where the forfeiture applies to video gaming machines that until recently were not contraband.

■ In determining whether the forfeiture of a particular type of property violates due process, we consider the nature of the property, the necessity for its sacrifice, and the extent to which it has heretofore been regarded as within the police power. *See Sentell v. New Orleans & C.R. Co.*, 166 U.S. 698, 705, 17 S.Ct. 693, 41 L.Ed. 1169 (1897); *Peoples Program for Endangered Species v. Sexton*, 323 S.C. 526, 529, 476 S.E.2d 477, 479 (1996). Gaming devices in general have long been recognized as legitimately within the police power of the State to control or take by forfeiture, *Lawton v. Steele*, 152 U.S. 133, 136, 14 S.Ct. 499, 38 L.Ed. 385 (1894), and we have consistently deferred to the legislature's determination of what gaming devices must be sacrificed for the public welfare. *See, e.g.,*

---

**7.** "[N]or shall any state deprive any person of life, liberty, or property, without due process of law." U.S. Const., Amend. XIV, § 1.

**8.** "[N]or shall private property be taken for public use, without just compensation." U.S. Const., Amend. V.

**9.** We construed § 12–21–2712 to include an opportunity for the owner to contest the magistrate's determination of illegality. *Id.* at 196, 525 S.E.2d 872.

*Johnson v. Collins Entertainment Co., supra.* Further, we have acknowledged the difficulty of enforcing statutes prohibiting gaming. *State v. Kizer,* 164 S.C. 383, 162 S.E. 444 (1932), *overruled on other grounds, State v. 192 Coin–Operated Video Game Machines,* 338 S.C. 176, 525 S.E.2d 872 (2000). As the United States Supreme Court has observed, forfeiture serves a deterrent purpose both by preventing the further illicit use of the property and by imposing an economic penalty, thereby rendering the illegal behavior unprofitable. *Bennis,* 516 U.S. at 452, 116 S.Ct. 994 (*quoting Calero–Toledo v. Pearson Yacht Leasing Co.,* 416 U.S. 663, 687, 94 S.Ct. 2080, 40 L.Ed.2d 452 (1974)). We conclude the forfeiture of gaming machines pursuant to §§ 12–21–2710 and –2712 comports with due process even when applied to machines that were previously lawfully possessed.

Further, we note there will have been a lapse of more than eight months from the time Part I of Act No. 125 became law by decision of this Court in October 1999 and the date it becomes enforceable on July 1, 2000. During this time, plaintiffs owning video gaming machines have been free to profitably dispose of them out of state. These plaintiffs have had a reasonable period of time to avoid any forfeiture of their property and cannot claim a compensable taking. *See Hamilton v. Kentucky Distilleries & Warehouse Co.,* 251 U.S. 146, 40 S.Ct. 106, 64 L.Ed. 194 (1919) (finding no taking under War–Time Prohibition Act which prohibited sale of liquor but allowed a period of seven months and nine days to dispose of stored liquor).

We find the forfeiture of plaintiffs' video gaming machines, or their leasehold interest in these machines, is not a compensable taking under either our Federal or State Constitutions.

## II.

■ Plaintiffs claim the forfeiture of their video gaming machines effects a taking of their businesses.

■ It has long been settled that injury to a business dependent on confiscated property is not compensable under the Fifth Amendment. *United States v. Petty Motor Co.,* 327 U.S. 372, 66 S.Ct. 596, 90 L.Ed. 729 (1946); *Mitchell v. United States,* 267 U.S. 341, 45 S.Ct. 293, 69 L.Ed. 644 (1925); *Joslin*

*Mfg. Co. v. City of Providence,* 262 U.S. 668, 43 S.Ct. 684, 67 L.Ed. 1167 (1923); *cf. Kimball Laundry Co. v. United States,* 338 U.S. 1, 69 S.Ct. 1434, 93 L.Ed. 1765 (1949) (where government has taken business for continued operation by government entity, Fifth Amendment requires compensation for going-concern value); *see also United States v. 57.09 Acres of Land,* 757 F.2d 1025 (9th Cir.1985); *Hooten v. United States,* 405 F.2d 1167 (5th Cir.1969); *United States v. Becktold Co.,* 129 F.2d 473 (8th Cir.1942); *cf. Yachts America, Inc. v. United States,* 779 F.2d 656 (Fed.Cir.1985) (destruction of business not compensable as separate element although value of business may be indirectly considered in valuation of land). The Fifth Amendment Takings Clause concerns itself solely with the owner's relation to the physical thing and not with consequential damages. *United States v. General Motors Corp.,* 323 U.S. 373, 65 S.Ct. 357, 89 L.Ed. 311 (1945). Collateral damages, which include lost business profits and goodwill, are not recoverable on a federal takings claim. *Id.; Mibbs v. South Carolina Dep't of Revenue,* 337 S.C. 601, 524 S.E.2d 626 (1999); *Carolina Power & Light Co. v. Copeland,* 258 S.C. 206, 188 S.E.2d 188 (1972).

We apply this same analysis to the takings claim under our State Constitution and find no taking of plaintiffs' businesses under either constitution.

## III.

■ Plaintiffs claim the forfeiture of their video gaming machines effects a taking of the real property upon which their businesses are located.

■ To the extent § 12–21–2710 may be considered a land use regulation, we consider its economic impact, its interference with reasonable investment-backed expectations, and the character of the governmental action in determining whether there has been a regulatory taking. *Eastern Enterprises v. Apfel,* 524 U.S. 498, 118 S.Ct. 2131, 141 L.Ed.2d 451 (1998). Although plaintiffs assert their real property is well-suited in location and configuration only to the video gaming business, they cannot tenably claim it will have absolutely no economic value if no longer used to house video gaming operations. Further, if the regulation does not deny the

owner all economically viable use of his land, it does not constitute a taking if it substantially advances legitimate government interests. *Lucas v. South Carolina Coastal Council,* 505 U.S. 1003, 112 S.Ct. 2886, 120 L.Ed.2d 798 (1992). As discussed above, we find the forfeiture of video gaming machines does substantially advance legitimate government interests in prohibiting illicit gaming.

■■■■■ Moreover, even where he is deprived of all economically viable use of his property, an owner must still have reasonable investment-backed expectations to establish a taking. *Good v. United States,* 189 F.3d 1355 (Fed.Cir.1999); *McQueen v. South Carolina Coastal Council,* 340 S.C. 65, 530 S.E.2d 628 (2000). A property owner operating in a highly regulated field cannot assert a reasonable expectation that government regulation will not be altered to his detriment. *Concrete Pipe and Products of California, Inc. v. Constr. Laborers Pension Trust for Southern California,* 508 U.S. 602, 113 S.Ct. 2264, 124 L.Ed.2d 539 (1993); *Connolly v. Pension Benefit Guar. Corp.,* 475 U.S. 211, 106 S.Ct. 1018, 89 L.Ed.2d 166 (1986). Where, as here, the regulatory climate renders an owner's investment-backed expectations unreasonable, no taking will be found. *Good,* 189 F.3d at 1362–63 (finding that in light of growing public consciousness and sensitivity on issue, owner must have been aware that the standards and conditions governing the issuance of permits could change to his detriment).

We apply this same analysis to the takings claim under our State Constitution and conclude plaintiffs have established no taking of their real property under either constitution.

## CONCLUSION

Because we find plaintiffs' takings claims to be without merit, we refuse to enjoin the enforcement of Part I of Act No. 125. Further, we summarily dispose of plaintiffs' 42 U.S.C. § 1983 cause of action. *See Brown v. Evatt,* 322 S.C. 189, 470 S.E.2d 848 (1996) (§ 1983 cause of action fails where no constitutional deprivation).

**INJUNCTION DENIED.**

TOAL, C.J., BURNETT, PLEICONES, JJ., and Acting Justice JAMES W. JOHNSON, Jr., concur.