621 S.E.2d 344

**MIMS AMUSEMENT COMPANY, Respondent,**

**v.**

**SOUTH CAROLINA LAW ENFORCEMENT DIVISION, Appellant.**

**No. 26046.**

Supreme Court of South Carolina.

Heard June 16, 2005.

Decided Oct. 3, 2005.

142

Attorney General Henry D. McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Robert D. Cook, Senior Assistant Attorney General

C. Havird Jones, Jr., and Assistant Attorney General Elizabeth R. McMahon, all of Columbia, for Appellant.

James M. Griffin, of Columbia, for Respondent.

Justice BURNETT:

This appeal raises the novel issue of whether a party has a right to a jury trial, under the state constitution, in a civil forfeiture proceeding involving an allegedly illegal video gaming machine. We certified this case for review from the Court of Appeals pursuant to Rule 204(b), SCACR, on the motion of Appellant, the South Carolina Law Enforcement Division (SLED). We now reverse the circuit court's ruling that a right to a jury trial exists in such a case.

## FACTUAL AND PROCEDURAL BACKGROUND

Law enforcement officials seized a Safari Skill video game belonging to Mims Amusement Co. (Owner) from a sports bar and grill in Berkeley County. SLED agents presented the machine to a magistrate pursuant to S.C.Code Ann. § 12–21–2712 (2000). The magistrate found the machine was an illegal gambling device in violation of S.C.Code Ann. § 12–21–2710 (2000) and ordered its destruction.

Owner moved for a post-seizure hearing and demanded a jury trial on the factual issue of whether the machine was an illegal gambling device. The magistrate granted a post-seizure hearing to Owner, but denied the request for a jury trial. Owner appealed the denial of its request for a jury trial to the circuit court.

The circuit court determined that all devices seized pursuant to Section 12–21–2710 are not necessarily illegal gambling devices because a magistrate must, as required by Section 12–21–2712, make a factual determination on the legality of a particular machine. The circuit court remanded the case to the magistrate, with instructions that when the magistrate finds there is no factual dispute about the illegality of the machine, then it may order the machine destroyed pursuant to the statute. However, when there is a factual dispute about the illegality of a particular machine, Owner is entitled to a jury trial to determine the issue. This appeal follows.

## ISSUE

Did the circuit court err in ruling that the owner of a video game machine seized by law enforcement authorities has a constitutional right to a jury trial in a civil forfeiture proceeding to determine whether the machine is an illegal gambling device?

## STANDARD OF REVIEW

In a case raising a novel question of law, the Court is free to decide the question with no particular deference to the lower court. The Court must decide the question based on its assessment of which answer and reasoning best comport with the law and public policies of this state and the Court's sense of law, justice, and right. *See I'On, L.L.C. v. Town of Mt. Pleasant,* 338 S.C. 406, 411, 526 S.E.2d 716, 719 (2000) (citing S.C. Const. art. V, §§ 5 and 9, S.C.Code Ann. §§ 14–3–320 and –330 (1976 & Supp.2004), and S.C.Code Ann § 14–8–200 (Supp.2004)); *Osprey, Inc. v. Cabana Ltd. Partnership,* 340 S.C. 367, 372, 532 S.E.2d 269, 272 (2000) (same); *Clark v. Cantrell,* 339 S.C. 369, 378, 529 S.E.2d 528, 533 (2000) (same); *Antley v. New York Life Ins. Co.,* 139 S.C. 23, 30, 137 S.E. 199, 201 (1927) ("In [a] state of conflict between the decisions, it is up to the court to 'choose ye this day whom ye will serve'; and, in the duty of this decision, the court has the right to determine which doctrine best appeals to its sense of law, justice, and right.").

## LAW AND ANALYSIS

SLED argues the circuit court erred in ruling the owner of a video gaming machine seized by law enforcement authorities has a constitutional right to a jury trial in a civil forfeiture proceeding to determine whether the machine is an illegal gambling device. SLED contends the ruling was erroneous because (1) a video game machine which violates the statute is contraband *per se,* just as illegal liquor or drugs, because an illegal gambling device does not have a normally lawful purpose; (2) the magistrate's determination of whether a machine is an illegal gambling device is not the type of case in which the right to a jury trial was secured at the time of the adoption of the state constitution; (3) this Court has recog-

nized that illegal gambling devices are contraband *per se,* and the due process required is a post-seizure hearing before a magistrate to show why a particular machine should not be forfeited; (4) the courts have never granted a jury trial in the seizure and destruction of illegal gambling devices; and (5) the forfeiture of illegal gambling devices is a strong deterrent to the possession and operation of such a devices, and granting a right to a jury trial would undermine the deterrent effect and cause unnecessary delays and problems in enforcement of the law.

In response, Owner contends (1) the State may not deprive an owner of his property without due process of law, which in this instance includes the right to a jury trial; (2) the state constitution, this Court's precedent, and court rules guarantee Owner a right to a jury trial in magistrate's court to determine the legality of a particular machine; (3) a video game machine is not contraband *per se* because it may normally be used for lawful purposes, provided it is not in violation of Section 12–21–2710; and (4) whether a particular machine is an illegal game of chance or a legal game of skill may involve a material factual dispute which a party has a right to ask a jury to resolve.

We decide this case in light of the recent history of video gambling in South Carolina, which mushroomed from a rather clandestine and inauspicious beginning in 1986 into a multi-billion dollar business by its demise in July 2000. *See e.g. Johnson v. Collins Entertainment Co.,* 88 F.Supp.2d 499 (D.S.C.1999) (outlining the below-the-radar development of $2.5 billion video poker industry in South Carolina, legislative attempts to regulate it, and state appellate court decisions on issues relating to the industry), *vacated by Johnson v. Collins Entertainment Co.,* 199 F.3d 710 (4th Cir.1999) (vacating district court's order because it improperly ruled on unsettled issues of state law); *Westside Quik Shop, Inc. v. Stewart,* 341 S.C. 297, 534 S.E.2d 270 (2000) (tracing history of anti-gambling statutes and subtle development of video poker industry); *Johnson v. Collins Entertainment Co.,* 349 S.C. 613, 564 S.E.2d 653 (2002) (addressing various certified questions from district court relating to special inducements and cash payouts by video poker operators); *Joytime Distribs. & Amusement Co. v. State,* 338 S.C. 634, 528 S.E.2d 647 (1999)

(Court enjoined a public referendum as an unconstitutional delegation of legislative authority; Court further held statutory ban on cash payouts by video poker operators was severable from unconstitutional provision and thus enforceable as of July 1, 2000).[1]

Gaming devices in general have long been recognized as legitimately within the police power of the State to control or take by forfeiture. *Westside Quik Shop, Inc. v. Stewart*, 341 S.C. 297, 303, 534 S.E.2d 270, 273 (2000) (citing *Lawton v. Steele*, 152 U.S. 133, 136, 14 S.Ct. 499, 38 L.Ed. 385 (1894)). Gaming machines have been illegal and subject to forfeiture as contraband in this state since the 1930s. *Id.* at 300, 534 S.E.2d 270, 534 S.E.2d at 271. This Court consistently has deferred to the Legislature's determination of which gaming devices must be sacrificed for the public welfare. Furthermore, forfeiture serves a deterrent purpose both by preventing the further illicit use of the property and by imposing an economic penalty, thereby rendering the illegal behavior unprofitable. *Id.* at 304, 534 S.E.2d at 273 (citing *Bennis v. Michigan*, 516 U.S. 442, 452, 116 S.Ct. 994, 134 L.Ed.2d 68 (1996) and *Calero–Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 686–87, 94 S.Ct. 2080, 40 L.Ed.2d 452 (1974)).

 An action for forfeiture of property is a civil action at law. *192 Coin–Operated Video Game Machines*, 338 S.C. at 184, 525 S.E.2d at 876; *State v. Petty*, 270 S.C. 206, 208, 241 S.E.2d 561, 562 (1978). Under S.C.Code Ann. § 12–21–2712 (2000),[2] video gaming machines that are operated or possessed

---

1. South Carolina media have published and aired an untold number of reports on video poker and the debate surrounding it since the 1990s. A Columbia newspaper recently highlighted the history and apparent demise of the business, but noted SLED has seized hundreds of allegedly illegal video gambling machines in thirty-eight counties during the past eighteen months. Clif LeBlanc, *Gambling in S.C.: The Debate Rages On*, The State D1 (June 26, 2005).

2. Section 12–21–2712 provides:

Any machine, board, or other device prohibited by Section 12–21–2710 must be seized by any law enforcement officer and at once taken before any magistrate of the county in which the machine, board, or device is seized who shall immediately examine it, and if satisfied that it is in violation of Section 12–21–2710 or any other law of this State, direct that it be immediately destroyed.

in violation of S.C.Code Ann. § 12–21–2710 (2000) [3] are subject to forfeiture as contraband *per se*. *Westside Quik Shop*, 341 S.C. at 303, 534 S.E.2d at 273; *192 Coin–Operated Video Game Machines*, 338 S.C. at 189, 525 S.E.2d at 879. A claimant's right to due process of law in the seizure of video game machines is satisfied when he receives a post-seizure hearing, and due process does not mandate a pre-seizure hearing. *192 Coin–Operated Video Game Machines*, 338 S.C. at 196–97, 525 S.E.2d at 883. Thus, we have decided that machines declared illegal by a magistrate or conceded to be illegal by the owner are contraband *per se*, and a claimant is entitled only to a post-seizure hearing.

In support of its argument, Owner points to this Court's observation in *State v. Kizer*, 164 S.C. 383, 162 S.E. 444 (1932), that owners of nickel slot machines could have brought a claim and delivery action, to be tried before a jury, rather than continually and improperly seeking injunctions to prevent law enforcement authorities from seizing particular machines. We have overruled *Kizer* "to the extent it permits the destruction of allegedly illegal property without *any* opportunity for the owner to contest the magistrate's determination of illegality." *192 Coin–Operated Video Game Machines*, 338 S.C. at 196–97, 525 S.E.2d at 883 (emphasis added). We held in *192 Coin–*

---

3. Section 12–21–2710 provides:

It is unlawful for any person to keep on his premises or operate or permit to be kept on his premises or operated within this State any vending or slot machine, or any video game machine with a free play feature operated by a slot in which is deposited a coin or thing of value, or other device operated by a slot in which is deposited a coin or thing of value for the play of poker, blackjack, keno, lotto, bingo, or craps, or any machine or device licensed pursuant to Section 12–21–2720 and used for gambling or any punch board, pull board, or other device pertaining to games of chance of whatever name or kind, including those machines, boards, or other devices that display different pictures, words, or symbols, at different plays or different numbers, whether in words or figures or, which deposit tokens or coins at regular intervals or in varying numbers to the player or in the machine, but the provisions of this section do not extend to coin-operated nonpayout pin tables, in-line pin games, or to automatic weighing, measuring, musical, and vending machines which are constructed as to give a certain uniform and fair return in value for each coin deposited and in which there is no element of chance. Any person violating the provisions of this section is guilty of a misdemeanor and, upon conviction, must be fined not more than five hundred dollars or imprisoned for a period of not more than one year, or both.

*Operated Video Game Machines* that examination of a video gaming machine in magistrate's court, with the availability of a post-seizure hearing, provides adequate due process to the machine's owner; consequently, a claim and delivery action is neither necessary nor allowed. Neither *Kizer* nor more recent authority resolves the issue at hand, which is whether a claimant has a right to demand that a jury, instead of only a judge, determine whether a particular machine is illegal and therefore subject to seizure and destruction as contraband *per se.*

The South Carolina Constitution provides "the right of trial by jury shall be preserved inviolate." S.C. Const. art. I, § 14. The right to a trial by jury is guaranteed in every case in which the right to a jury was secured at the time of the adoption of the Constitution in 1868. *Medlock v.1985 Ford F-150 Pick Up,* 308 S.C. 68, 70–71, 417 S.E.2d 85, 86 (1992). The right to a jury trial encompasses forms of action that have arisen since the adoption of the Constitution in those cases where the later actions are of like nature to actions which were triable at common law at the time of the adoption of the Constitution. *Id.*

The Legislature may not abrogate the right to a jury trial simply by designating a proceeding as a civil action without a jury. *1985 Ford F-150 Pick Up,* 308 S.C. at 72, 417 S.E.2d at 87. The Court has the final responsibility of construing the constitution and laws of this state, and must do so without concern for political or popular opinion. *E.g. Martin v. Condon,* 324 S.C. 183, 189, 478 S.E.2d 272, 275 (1996); *Evatte v. Cass,* 217 S.C. 62, 65, 59 S.E.2d 638, 639 (1950); *see also Marbury v. Madison,* 1 Cranch 137, 5 U.S. 137, 2 L.Ed. 60 (1803).

Courts have recognized two classes of contraband subject to forfeiture by statute. The first class is contraband *per se,* which are things that may be forfeited because they are illegal to possess and not susceptible of ownership. This class includes illegal gambling devices such as roulette wheels or craps tables, "moonshine" liquor, illegal narcotic drugs, or unregistered guns. The second class is derivative contraband, which are things that may be forfeited because they are instrumentalities of a crime, but which ordinarily are not

illegal to possess. This class includes items such as currency, vehicles, or real property used in the commission of a crime or traceable to the proceeds of criminal activity. *See State v. 192 Coin–Operated Video Game Machines,* 338 S.C. 176, 189, 525 S.E.2d 872, 879 (2000) (discussing two classes of contraband and determining that video game machines found by magistrate to be illegal gambling devices or conceded by owner to be such are contraband *per se* ); *U.S. v. Rodriguez Aguirre,* 264 F.3d 1195, 1213 n. 13 (10th Cir.2001) (cocaine is contraband *per se;* automobile used in bank robbery is derivative contraband); *State v. Edwards,* 787 So.2d 981, 988–89 (La. 2001) (discussing two classes of contraband); *People ex rel. O'Malley v. 6323 North LaCrosse Ave.,* 158 Ill.2d 453, 199 Ill.Dec. 690, 634 N.E.2d 743, 746 (1994) ("Contraband *per se* consists of items which are inherently illegal to possess. There is a vast difference between the forfeiture of contraband *per se* and the forfeiture, by an innocent third party, of legal property—in this case a residence."); *People v. One 1941 Chevrolet Coupe,* 37 Cal.2d 283, 231 P.2d 832, 843 (1951) (distinguishing between derivative contraband such as automobile and contraband *per se* or public nuisances *per se* such as gambling paraphernalia, counterfeit coins, diseased cattle, or decayed fruit and fish); *State ex rel. Brett v. Four Bell Fruit Gum Slot Machines,* 196 Okla. 44, 162 P.2d 539 (1945) (slot machines are contraband *per se* ); *Frost v. People,* 193 Ill. 635, 61 N.E. 1054, 1056 (1901) (craps tables and roulette wheel are contraband *per se* because they "had no value or use for any other purpose than that of gambling"); *City of Chicago v. Taylor,* 332 Ill.App.3d 583, 266 Ill.Dec. 244, 774 N.E.2d 22, 31 (2002) (unregistered gun is contraband *per se* in locality which requires registration of guns).[4]

---

4. The government's seizure of alleged contraband may arise in the context of a civil or criminal forfeiture proceeding. This appeal involves a civil forfeiture proceeding, not a criminal forfeiture proceeding which generally arises during the criminal prosecution of a person. "The critical difference between civil forfeiture and criminal forfeiture is the identity of the defendant. In civil forfeiture, the Government proceeds against a thing (*rem* ). In criminal forfeiture, it proceeds against a human being (*personam* ). Any differences between civil forfeiture and criminal forfeiture arise from the practical and theoretical considerations implicated when the Government proceeds against an inanimate object or a person." *U.S. v. Croce,* 345 F.Supp.2d 492, 494 (E.D.Pa.2004); *see also U.S. v. Gilbert,* 244 F.3d 888, 918–20 (11th

A property interest in derivative contraband is not extinguished automatically if the property is used unlawfully; therefore, forfeiture of such property is permitted only as authorized by statute and in compliance with the safeguards of due process. *See U.S. v. $8,850 in U.S. Currency,* 461 U.S. 555, 103 S.Ct. 2005, 76 L.Ed.2d 143 (1983) (eighteen-month delay by government in filing civil forfeiture action did not constitute violation of due process under circumstances of case); *U.S. v. $23,407.69 in U.S. Currency,* 715 F.2d 162 (5th Cir.1983) (due process requires government to explain and justify substantial delay in seeking civil forfeiture of seized property); *Aguirre,* 264 F.3d at 1213 n. 13 (same); *State v. Curran,* 291 Or. 119, 628 P.2d 1198, 1203 (1981) (distinguishing between contraband *per se* and derivative contraband, with the latter afforded greater legal protection than property which is inherently injurious to public welfare).

In *1985 Ford F-150 Pick Up,* we addressed the owner's right to a jury trial in the civil forfeiture of a pickup truck, an item of derivative contraband which normally is used for lawful purposes. The State seized the truck pursuant to a statute forfeiting property used to produce or distribute illegal drugs. We held that a right to a jury trial in such a proceeding existed when the state Constitution was adopted in 1868. *1985 Ford F-150 Pick Up,* 308 S.C. at 70–71, 417 S.E.2d at 86.

We further reasoned that, while an owner generally has the statutory right to replevy against the state for property wrongfully detained, items seized as a result of illegal drug offenses are not subject to replevin. Instead, the items are considered to be in the custody of the department making the seizure, subject only to the orders of the court having jurisdiction over the forfeiture proceeding. Property described in the drug forfeiture statute is forfeited and transferred to the government at the moment of illegal use, and the subsequent

---

Cir.2001) (discussing history of forfeiture law and traditional distinctions between civil forfeiture proceeding against a thing and criminal forfeiture proceeding against a person); *State v. Edwards,* 787 So.2d 981, 990–91 (La.2001) (discussing differences between civil and criminal forfeiture); *State v. Petty,* 270 S.C. 206, 208–09, 241 S.E.2d 561, 562 (1978) (action for forfeiture of property is civil, in rem proceeding against the property itself).

seizure and forfeiture proceeding merely confirm the transfer. *Id.* at 71–72, 417 S.E.2d at 87. Consequently, owners of seized property have a right to a jury trial in a civil forfeiture proceeding involving derivative contraband, *i.e.,* when the property subject to forfeiture normally is used for lawful purposes. *Id.; Gossett v. Gilliam,* 317 S.C. 82, 87, 452 S.E.2d 6, 8 (Ct.App.1994) (recognizing same principle).

In *1985 Ford F–150 Pick Up,* we adopted the majority view on the issue of jury trials in civil forfeiture proceedings involving derivative contraband. *See e.g. State v. One 1981 Chevrolet Monte Carlo,* 728 A.2d 1259 (Me.1999) (party in interest to an *in rem* civil forfeiture proceeding involving a vehicle and money, seized as a result of drug law violations, has a right to a jury trial under Maine Constitution); *Idaho Dept. of Law Enforcement By and Through Cade v. Free,* 126 Idaho 422, 885 P.2d 381, 386 (1994) (finding a right to jury trial in civil forfeiture proceeding because that right existed at common law when Idaho Constitution was adopted); *People ex rel. O'Malley v. 6323 North LaCrosse Ave.,* 158 Ill.2d 453, 199 Ill.Dec. 690, 634 N.E.2d 743 (1994) (in civil forfeiture proceeding involving real property used to facilitate drug trafficking, Illinois Constitution's jury trial provision mandates that claimant has right to jury trial; statute which denied such right was unconstitutional); *Com. v. One 1984 Z–28 Camaro Coupe,* 530 Pa. 523, 610 A.2d 36 (1992) (owner of property subject to forfeiture under Controlled Substances Forfeiture Act, in this case a vehicle, is entitled to jury trial under Pennsylvania Constitution); *Department of Law Enforcement v. Real Property,* 588 So.2d 957, 967 (Fla.1991) (forfeiture of property seized as a result of drug law violations must be decided by jury trial unless claimant waives that right).

The rule we adopted in *1985 Ford F–150 Pick Up* also is in accord with statutory and case law of the United States regarding the right to a jury trial in a civil forfeiture proceeding involving derivative contraband. *See C.J. Hendry Co. v. Moore,* 318 U.S. 133, 152–53, 63 S.Ct. 499, 87 L.Ed. 663 (1943) (Supreme Court "has repeatedly declared that, in cases of forfeiture of articles seized on land for violation of federal statutes, the district courts proceed as courts of common law according to the course of the Exchequer on informations *in rem* with trial by jury"); *Garnharts v. U.S.,* 16 Wall. 162, 83

U.S. 162, 21 L.Ed. 275 (1872) (claimant whose goods have been seized on land for violation of internal revenue laws is entitled to trial by jury when he appears and denies facts charged in the information); *U.S. v. One Lincoln Navigator 1998,* 328 F.3d 1011 (8th Cir.2003) (claimant has Seventh Amendment right to jury trial in federal non-admiralty civil forfeiture proceedings); *U.S. v. One 1976 Mercedes Benz 280S,* 618 F.2d 453 (7th Cir.1980) (history and development of right to jury trial in civil forfeiture proceedings, and holding claimant entitled to jury trial); 8 James W. Moore et al., *Moore's Federal Practice* § 38.33[16][a] (3d ed.2005) (most forfeiture statutes expressly provide for jury trial, but right exists in government's seizure of property which occurs on land even in absence of statutory provision).

The controlling question we must answer, then, is whether a video gaming machine—at the moment of seizure—is an item of contraband *per se* or derivative contraband. Is the unexamined machine more like a roulette wheel or an automobile? If it is the former, a claimant has no right to a jury trial; if it is the latter, a claimant has a right to a jury trial. The parties have not cited and we have not found a case involving a video gaming machine in which a court has decided this precise issue.

We conclude, based on our precedent addressing an owner's right to adequate due process in the forfeiture of a machine and the statutory regulation of the video gaming business, that a video gaming machine constitutes contraband *per se* at the moment it is seized by authorities. Section 12–21–2710 provides that

> "it is unlawful for any person to keep on his premises or operate or permit to be kept on his premises or operated within this State any ... video game machine with a free play feature operated by a slot in which is deposited a coin or thing of value ... for the play of poker, blackjack, keno, lotto, bingo, or craps, or any machine or device licensed pursuant to Section 12–21–2720 and used for gambling ... or other device pertaining to games of chance of whatever name or kind, including those machines, boards, or other devices that display different pictures, words, or symbols, at different plays or different numbers, whether in words or

figures or, which deposit tokens or coins at regular intervals or in varying numbers to the player or in the machine. . . ."

Section 12–21–2710 exempts from its provisions legal vending machines which give a uniform and fair return in value for each coin deposited and in which there is no element of chance. It is apparent, however, that an allegedly illegal video gaming machine is deemed an unlawful gambling device at the moment of seizure, *i.e.*, the machine is contraband *per se* because it is illegal to possess and not susceptible of ownership. Moreover, this conclusion is appropriate in light of South Carolina's long-established statutory prohibitions on the ownership or use of specified gambling devices, including video gambling devices developed in recent years. *See Johnson*, 88 F.Supp.2d at 502 n. 1 ("[l]egislation designed to control 'the mischiefs of gambling' was enacted by the South Carolina colonial legislature in 1712"). Accordingly, we conclude that a seized video gaming machine constitutes contraband *per se* in the nature of a roulette wheel, and is not in the nature of derivative contraband such as a vehicle or parcel of real property normally used for lawful purposes.

The owner of an item deemed contraband *per se* does not enjoy a constitutional right to a jury trial. In *Frost v. People*, 193 Ill. 635, 61 N.E. 1054 (1901), the appellant argued he had a right to a jury trial in the seizure and destruction of illegal gambling devices, which included two craps tables and a roulette wheel. The Illinois Supreme Court disagreed.

> Trial by jury was never a right in summary proceedings, and the legislature did not violate the constitution by providing that gaming implements and apparatus should be destroyed, after a hearing, under the direction of the judge, justice, or court. . . . The legislature has determined that gambling implements and apparatus are pernicious and dangerous to the public welfare, and the keeping of them is an offense prohibited by law. They are therefore not lawful subjects of property, which the law protects, but have ceased to be regarded or treated as property, and are liable to seizure, forfeiture, and destruction without violating any constitutional provision.

*Id.* at 1056; *accord People v. One Pinball Machine*, 316 Ill.App. 161, 44 N.E.2d 950, 957 (1942) ("the seizure of proper-

ty employed as a gambling device in violation of a statute is a proceeding *in rem,* and being contraband, the provisions of the Constitution relating to trial by jury and depriving one of his liberty or property without due process of law are inapplicable"); *Furth v. State,* 72 Ark. 161, 78 S.W. 759 (1904) (rejecting claimant's demand for jury trial in forfeiture of roulette wheel and other illegal gambling devices under rationale of "fish net case," which allows seizure and destruction of property without jury trial when it is of little value or of no practical use except for illegal gambling); *State v. Klondike Machine,* 76 Vt. 426, 57 A. 994 (1904) (seizure and destruction of gambling machine kept in public place is valid without the requirement of a jury); *Kite v. People,* 32 Colo. 5, 74 P. 886 (1903) (claimant does not have right to jury trial in forfeiture of roulette wheel, which could only be used for illegal gambling); Annots., *Right to Jury Trial In Case of Seizure of Property Alleged To Be Illegally Used,* 17 A.L.R. 568 § VI (1922) and 50 A.L.R. 97 § VI (1927); Annot., *Constitutionality of Statutes Providing for Destruction of Gambling Devices,* 14 A.L.R.3d 366 § 4 (1967).

■ We recently held that a magistrate's ruling on legality applies only to the machine before the court. We further observed that a particular video gaming machine may be manipulated so as to change its nature from lawful to unlawful, which is one reason why the legality of a particular machine must be determined on an individual basis at the time of seizure and examination. *Allendale County Sheriff's Office v. Two Chess Challenge II,* 361 S.C. 581, 587, 606 S.E.2d 471, 474 (2004). We were not faced with the issue of a right to a jury trial in *Allendale* and our observation in that case is not dispositive. While a machine ultimately may be shown to be lawful in a post-seizure hearing before a magistrate, it is nevertheless deemed contraband *per se* at the moment of seizure. We conclude an owner's right to due process in the civil forfeiture of a video gaming machine under the state constitution and pertinent statutes is satisfied when he is given a post-seizure hearing before the magistrate, with the right to appeal that ruling to circuit and appellate courts. *See* S.C.Code Ann. § 18–7–20 (Supp.2004), § 14–5–340 (1976), § 14–3–330 (1976 & Supp.2004), and § 14–8–200 (Supp.2004).

## CONCLUSION

The owner of a video game machine seized by law enforcement authorities does not have a constitutional right to a jury trial in a civil forfeiture proceeding to determine whether the machine is an illegal gambling device because the device, at the moment of seizure, is deemed an item of contraband *per se*. The owner's constitutional right to due process of law is satisfied by a post-seizure hearing before the magistrate to determine the legality of a machine, with the right to appeal the ruling to higher courts.

**REVERSED.**

TOAL, C.J., MOORE and WALLER, JJ., concur.
PLEICONES, J., concurring in result only.